OPINION
{¶ 1} Appellee, St. Francis Home, Inc., is a non-profit corporation that operates a long-term care facility and participates in the state's Medical Assistance Program, commonly known as the "Medicaid" program. Pursuant to R.C. Chapter 5111 and Title XIX of the Social Security Act, appellant, Ohio Department of Job and Family Services ("appellant" or "ODJFS"), administers the Medicaid program in Ohio. Medicaid long-term care providers are required to submit yearly cost reports to ODJFS in order to determine the providers' correct Medicaid rates. See R.C. 5111.26. After an audit of its cost reports, if ODJFS determines that a provider has been overpaid, it is authorized to recover the overpayments after the provider has been given an opportunity to contest the audit findings. See R.C. 5111.06.
 {¶ 2} Between 1988 and 1995, Robert Stagger, appellee's former Chief Financial Officer, embezzled a substantial amount of money from appellee. He generated blank checks from appellee's computer system and entered his name as payee and the amount of the check. He deposited these checks into his personal accounts.
 {¶ 3} After forging checks, Stagger transferred funds from appellee's savings account to its checking account to cover both legitimate checks written to vendors and illegitimate checks he issued to himself. He created false journal entry debits in the accounts receivable account and credited the cash account of appellee's books in the amount of the fraudulent check withdrawals. Thus, the cumulative balance of the accounts receivable account increased throughout the year.
 {¶ 4} At the end of the year, Stagger created another false journal entry debiting the fringe benefits holding account in an amount equal to the false debits that he had made to the accounts receivable account throughout the year. He then allocated the gross amount of the false fringe benefits debit to the individual fringe benefit sub-accounts for each of appellee's 12 departments. Thus, a portion of these fraudulent debits for fringe benefits were subsequently reported on appellee's Medicaid cost reports as legitimate costs.
 {¶ 5} One of appellee's employees discovered one of the fraudulent canceled checks and reported the discovery to the nursing home administrator. The matter was referred to the Seneca County Prosecuting Attorney. The prosecutor's office requested the assistance of the Health Care Fraud Section of the Attorney General's Office. Joseph J. Joseph, a special agent in the Medicaid Fraud Control Unit, was assigned to the investigation.
 {¶ 6} Special Agent Joseph investigated the extent of the embezzlement. Appellee supplied him with its trial balance, general ledger, check register and canceled checks. He also obtained appellee's checking account records and the banking accounts of Stagger. ODJFS supplied the Medicaid cost reports filed by appellee, the desk reviews of those reports and any interim settlements for the time period. Joseph analyzed these documents and calculated a total loss of $879,170. Joseph then established the amount of Medicaid funds that were improperly paid to appellee between 1989 and 1994 due to the inflated fringe benefits reported on the cost reports. He calculated a total overpayment of $174,960.48 and allocated the amount pro rata to the periods in question.
 {¶ 7} After reporting the embezzlement to the prosecutor, appellee hired Scheffler Scherer C.P.A. Group to independently determine the extent of Stagger's embezzlement. Juli Tall, a certified public accountant, conducted an audit. Tall discovered Stagger had fraudulently taken an additional $10,000 from the bank account of the apartments owned and managed by appellee. Stagger admitted his guilt, pled guilty to charges of aggravated theft and Medicaid fraud and was ordered to pay full restitution to appellee and the state of Ohio.
 {¶ 8} Appellant conducted targeted desk audits of the cost reports for the years affected by Stagger's embezzlement relying exclusively on the investigative report prepared by Joseph. On September 13, 1996, appellant issued a proposed final settlement for the July 1, 1992 through June 30, 1993 reimbursement period ("fiscal year 1993"). Based on the adjustments to the reported costs for fringe benefits, appellant claimed appellee had been overpaid $33,701.27. On March 6, 1998, appellant issued a proposed final rate recalculation for July 1, 1995 through June 30, 1996 ("fiscal year 1996"). Based on the adjustments to the reported costs for fringe benefits, appellant claimed appellee had been overpaid $97,116.52. Appellee requested exit conferences, after which appellant served appellee with notice of its intention to enter adjudication orders on the proposed final settlement for fiscal year 1993 and proposed final rate recalculation for fiscal year 1996. Appellee requested a hearing to contest the overpayment findings and a hearing examiner conducted a hearing.
 {¶ 9} The hearing examiner issued a report and recommendation finding that the audits had been conducted improperly and recommended that the director decline to enter the proposed adjudication orders and to return the matters for the completion of new audits.
 {¶ 10} The director of ODJFS rejected four of the hearing examiner's legal conclusions and determined that ODJFS had met its burden at the administrative hearing and there was no basis for concluding that the audits did not comply with R.C.5111.27(B). He issued an adjudication order requiring appellee to pay $33,701.27 for fiscal year 1993, and $97,116.52 for fiscal year 1996, from which appellee appealed to the common pleas court.
 {¶ 11} The common pleas court reversed the adjudication order finding that the adjudication order was not supported by reliable, probative, and substantial evidence and not in accordance with applicable law.
 {¶ 12} Appellant filed a notice of appeal, raising the following assignments of error:
First Assignment of Error: The Common Pleas Court Erred In Holding That ODJFS's Director Wrongly Disapproved The Hearing Examiner's Legal Conclusions F, H, I, and J, Even Though Those Conclusions Were Incorrect.
Second Assignment of Error: The Common Pleas Court Erred By Concluding That ODJFS's Adjudication Order Is Not Supported By Reliable, Probative And Substantial Evidence And Is Not In Accordance With Law.
 {¶ 13} R.C. 119.12 provides the standard of review for the common pleas court, as follows:
The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. * * *
 {¶ 14} In Lorain City Bd. of Edn. v. State Emp. RelationsBd. (1988), 40 Ohio St.3d 257, 260-261, the Ohio Supreme Court set forth the standard of review for an appellate court as follows:
In reviewing an order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the same order. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The appellate court is to determine only if the trial court has abused its discretion. An abuse of discretion `* * * implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.' State, ex rel.Commercial Lovelace Motor Freight, Inc., v. Lancaster (1986),22 Ohio St.3d 191, 193 * * *. Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment. See Rohde v. Farmer (1970), 23 Ohio St.2d 82
* * *.
The fact that the court of appeals, or this court, might have arrived at a different conclusion than did the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so.
 {¶ 15} On questions of law, however, the common pleas court does not exercise discretion and the court of appeals review is plenary. Univ. Hosp., Univ. of Cincinnati College of Medicine v.State Emp. Relations Bd. (1992), 63 Ohio St.3d 339, paragraph one of the syllabus.
 {¶ 16} In Our Place, Inc. v. Ohio Liquor Control Comm.
(1992), 63 Ohio St.3d 570, 571, the court defined the evidence required by R.C. 119.12, as follows:
* * * (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.
(Footnotes omitted.)
 {¶ 17} In the first assignment of error, appellant contends that the common pleas court erred in holding that ODJFS's director wrongly disapproved the hearing examiner's legal conclusions F, H, I, and J. The hearing examiner's legal conclusion F states as follows:
F. The scope of an audit conducted under R.C. 5111.27(B) is within the discretion of the Department. When the Department exercises its discretion to audit the provider's cost report, it must utilize auditing procedures that are objectively verifiable. The audit should be conducted in a manner as to yield an accurate result. Evid.R. 702(C).
 {¶ 18} Evid.R. 702 concerns the admission of expert testimony, as follows:
A witness may testify as an expert if all of the following apply:
(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
(2) The design of the procedure, test, or experiment reliably implements the theory;
(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.
 {¶ 19} Evid.R. 702 does not involve audits. ODJFS's director found that the principles the hearing examiner required, that the audits be conducted in a manner to yield an accurate result and ODJFS utilize auditing procedures that are objectively verifiable, are correct principles, but the hearing examiner's conclusion that the audits are required to be conducted in compliance with Evid.R. 702(C) is incorrect.
 {¶ 20} The principles required by the hearing examiner are embodied within R.C. 5111.27(B)(1) through (8). These are eight requirements that the audit manual and program set forth for the audits of nursing facilities, as follows:
(1) Comply with the applicable rules prescribed pursuant to Titles XVIII and XIX of the "Social Security Act," 49 Stat. 620
(1935), 42 U.S.C.A. 301, as amended;
(2) Consider generally accepted auditing standards prescribed by the American institute of certified public accountants;
(3) Include a written summary as to whether the costs included in the report examined during the audit are allowable and are presented fairly in accordance with generally accepted accounting principles and department rules, and whether, in all material respects, allowable costs are documented, reasonable, and related to patient care;
(4) Are conducted by accounting firms or auditors, who, during the period of the of the auditors' professional engagement or employment and during the period covered by the cost reports, do not have nor are committed to acquire any direct or indirect financial interest in the ownership, financing, or operation of a nursing facility or intermediate care facility for the mentally retarded in this state;
(5) Are conducted by accounting firms or auditors who, as a condition of the contract or employment, shall not audit any facility that has been a client of the firm or auditor;
(6) Are conducted by auditors who are otherwise independent as determined by the standards of independence established by the American institute of certified public accountants;
(7) Are completed within the time period specified by the department;
(8) Provide to the nursing facility or intermediate care facility for the mentally retarded complete written interpretations that explain in detail the application of all relevant contract provisions, regulations, auditing standards, rate formulae, and departmental policies, with explanations and examples, that are sufficient to permit the facility to calculate with reasonable certainty those costs that are allowable and the rate to which the facility is entitled.
 {¶ 21} These requirements embody the standards that the audits be conducted in a manner to produce an accurate result and ODJFS utilize auditing procedures that are objectively verifiable. Therefore, it is unnecessary to require that the audits comply with Evid.R. 702(C), which applies to expert testimony. The hearing examiner did not find that ODJFS failed to comply with the applicable requirements set forth in R.C.5111.27(B)(1) through (8). Thus, the common pleas court erred in agreeing with the hearing examiner regarding Conclusion of Law F as that conclusion was based upon the failure to comply with Evid.R. 702(C), and not R.C. 5111.27(B)(2).
 {¶ 22} The hearing examiner's legal conclusion H states as follows:
H. An audit that is limited in scope to a particular item or account on a Medicaid report should be conducted in accordance with the general audit standards of adequate technical training and proficiency, independence, and due care. 1 AICPA, Auditing Standards 1062, § 622.05. The auditor conducting such an audit should obtain and examine sufficient competent evidential material to reach an opinion or finding on the particular item or account that is the focus of the limited review. Id.
 {¶ 23} The hearing examiner imposed more requirements on the ODJFS auditors than should have been. As mentioned, while the concepts embedded in Evid.R. 702(C) apply, the rule does not specifically apply to audits. Similarly, pursuant to R.C.5111.27(B), ODJFS auditors are required to consider generally accepted auditing standards and the hearing examiner's finding that the auditors did not comply with generally accepted auditing standards does not render the audit invalid. R.C. 5111.27(B) provides the requirements for an audit, and, as stated previously, the hearing examiner did not find that ODJFS failed to comply with these requirements. Thus, the common pleas court erred in agreeing with the hearing examiner regarding Conclusion of Law H.
 {¶ 24} The hearing examiner's legal conclusion I, states as follows:
I. The targeted audits of Provider's Medicaid reports were not conducted in a manner directed to achieving a reliable result or in manner that can be objectively verified. The Reimbursement Section's adoption of the findings reached by the Attorney General in the criminal investigation contravened the general auditing standards of independence and due care, as well as the duty to review the original documentation, i.e., the bookkeeping, accounting, and bank records and canceled checks, necessary to support those findings.
 {¶ 25} Appellee contended that no audit was conducted because the auditors used Joseph's report as the basis for their audit. The fact that the ODJFS auditors did not conduct a new fraud investigation does not disqualify the audit. R.C. 5111.27(B) provides that the scope of an audit conducted is within the discretion of ODJFS.
 {¶ 26} Also, one of the ODJFS auditors testified that a "targeted review" was conducted and the auditors analyzed Joseph's working papers and made adjustments to "tie back the trial balances" to the cost report. (Tr. at 24, 29, 33.) He testified that auditors are permitted to place reliance on other auditor's workpapers. (Tr. at 29.) The ODJFS auditors needed to verify the improper costs which appellee admitted were incorrect because of Stagger's embezzlement. Appellee did not change and resubmit the incorrect cost reports. Appellant's auditors used appellee's own submissions and records as obtained by Joseph to reach the result that it did, after taking into account the effect of the embezzlement. Appellee had those records which are verifiable and offered no testimony contrary to the findings. Instead, appellee only challenged the auditing process which was properly done within the discretion of appellant. Thus, the common pleas court erred in agreeing with the hearing examiner regarding Conclusion of Law I.
 {¶ 27} The hearing examiner's legal conclusion J, states as follows:
J. Due to these deficiencies, the reports of the targeted audits fail to support the amounts of the proposed adjustments to the costs of employee fringe benefits reported on Provider's cost reports for the second half of calendar year 1992, the first half of calendar year 1993, and calendar year 1994; which form the basis of the proposed adjudications orders for fiscal years 1993 and 1996.
 {¶ 28} The hearing examiner's legal conclusion J is based upon his legal conclusions F, H, and I. Given that we agree with the director and the adjudication order that these conclusions of the hearing examiner were in error, the legal conclusion based upon those conclusions is also in error. Appellant's first assignment of error is well-taken.
 {¶ 29} In the second assignment of error, appellant contends that the common pleas court erred by concluding that ODJFS's adjudication order is not supported by reliable, probative, and substantial evidence and is not in accordance with law.
 {¶ 30} Ohio Adm. Code 5101:6-50-09(A)(4) provides that any audit report, report of examination, exit conference report or report of final settlement issued by ODJFS and entered into evidence is to be considered prima facie evidence of what it asserts. Prima facie evidence has been defined as that which is "sufficient to support but not compel a certain conclusion and does no more than furnish evidence to be considered and weighed but not necessarily accepted by the trier of facts." City ofCleveland v. Keah (1952), 157 Ohio St. 331, 337. But such evidence is not conclusive, rather, "[t]he term denotes evidence which will support, but not require, a verdict in favor of the party offering the evidence." Krischbaum v. Dillon (1991),58 Ohio St.3d 58, 64.
 {¶ 31} In Cotterman v. Ohio Dept. of Pub. Welfare (1986),28 Ohio St.3d 256, the Ohio Supreme Court examined the prior version of the regulation and defined the effect of the rule in a case involving alleged overpayments appellant received for Medicaid services rendered. The state's case was premised on 123 sample cases collected randomly from appellant's Medicaid records and, during the hearing, the state presented evidence concerning 17 of the cases. The issue was whether the state lost its presumption of a prima facie case with respect to all 123 cases, or just the 17 cases to which the evidence was presented. The court evaluated Ohio Adm. Code 5101:50-22 and determined that the provision placed the burden of production, not the burden of proof, on the appellant to rebut each sample case. The Ohio Supreme Court found that the presumption applies separately to each sample case contained in a valid report of examination. However, where evidence is presented by the Ohio Department of Public Welfare, now ODJFS, "with respect to a case or cases, the presumption would ab initio be inapplicable." (Emphasis sic.)Cotterman, at 258, citing Ayers v. Woodard (1957),166 Ohio St. 138, paragraph three of the syllabus.
 {¶ 32} In this case, ODJFS presented a prima facie case consisting of the audit workpapers created by ODJFS auditors, the cost report data submitted by appellee to ODJFS, the provider agreements, formal notifications by ODJFS of the amounts owed as a result of the recalculation of its reimbursement rate, the proposed adjudication packets, certified mail return receipts indicating appellee timely received the adjudication order packet, exit conference requests, rate settings and correspondence between ODJFS and appellee regarding final settlement and the R.C. 119 proceedings.
 {¶ 33} As to presenting evidence to rebut the prima facie case, appellee attempted to demonstrate that no audit was conducted and that the audit reports were not issued timely. The hearing examiner, the director and the common pleas court agreed that appellee did not demonstrate either contention. Appellee admitted that the cost reports as submitted to ODJFS were incorrect and appellee did not submit corrected forms. Under these circumstances, appellee failed to rebut the prima facie case as presented by ODJFS. The common pleas court did err in concluding that ODJFS's adjudication order is not supported by reliable, probative, and substantial evidence and is not in accordance with law. Appellant's second assignment of error is well-taken.
 {¶ 34} For the foregoing reasons, appellant's two assignments of error are sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court to enter an order affirming the director's adjudication order.
Judgment reversed and cause remanded with instructions.
Brown and French, JJ., concur.
McCormac, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.