SENIOR CITIZENS COALITION ET AL., APPELLANTS, *v.*
PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as Senior Citizens Coalition v. Pub. Util. Comm. (1982),
69 Ohio St. 2d 625.]

(No. 81-946—Decided March 3, 1982.)

626

*Mr. Joseph P. Meissner,* for appellants.

*Mr. William J. Brown,* attorney general, *Mr. Marvin I. Resnik* and *Ms. Marsha R. Schermer,* for appellee.

*Messrs. Squire, Sanders & Dempsey, Mr. Alan P.*

*Buchmann* and *Mr. Richard W. McLaren, Jr.,* for intervening . appellee.

*Per Curiam.* The pivotal issues in ' this case are: (1) whether the commission lawfully exercised its discretion in refusing to grant North Shore Alert's petition for leave to intervene and in granting limited intervention to the remaining three appellants and (2) whether the commission's distribution of the revenue increase among the various CEI customer classes is amply supported by the record.

In the joint petition for leave to intervene, North Shore Alert alleged that it was a greater Cleveland area safe energy group which operates by "protesting the use of nuclear energy." Indeed, appellants' brief to this court admits that the interest of the North Shore Alert is "the dangers of nuclear power." However, in *Cleveland* v. *Pub. Util. Comm.* (1980), 64 Ohio St. 2d 209, we ruled, at page 215, that the federal government has preempted state regulation of the operational safety of nuclear power plants. Therefore, the commission clearly did not abuse its discretion in refusing to permit North Shore Alert to intervene in the proceedings to raise issues over which the commission has no jurisdiction.

In reviewing the intervention arguments advanced by the three remaining appellants, we receive precedential guidance from the companion case of *Toledo Coalition for Safe Energy* v. *Pub. Util. Comm.* (1982), 69 Ohio St. 2d 559, in which we ruled that the commission, as part of its inherent power to manage the orderly flow of its business, has the discretionary power to permit or deny intervention in its proceedings. See, also, *Consumers' Counsel* v. *Pub. Util. Comm.* (1978), 56 Ohio St. 2d 220; *Dworken* v. *Pub. Util. Comm.* (1938), 133 Ohio St. 208. See, generally, *Sanders Transfer, Inc.,* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 21.

In *Toledo Coalition for Safe Energy, supra,* this court identified those factors which are legally significant in evaluating the commission's discretionary decisions on permissive intervention. The critical factors include, *inter alia:* the nature and extent of the prospective intervenor's interest; the legal position advanced by the prospective intervenor and its probable relation to the merits of the case; whether the pro-

spective intervenor's interests are adequately represented by other parties; whether intervention will prolong or unduly delay the case; and whether the party seeking intervention will significantly contribute to full development and equitable resolution of the underlying factual issues in the case.[8]

Applying these criteria to the appellants, we find that the commission correctly decided to prohibit their intervention on the rate base and operating expense issues because (1) appellants failed to demonstrate any limited, identifiable interest which differentiated them from ordinary residential customers of CEI who were already represented in this proceeding by Consumers' Counsel and, to a lesser extent, the city of Cleveland, and (2) failed to demonstrate that Consumers' Counsel and the city of Cleveland did not adequately represent appellants' interests.

As such, appellants failed to make the "compelling showing," which we required in *Toledo Coalition for Safe Energy, supra,* as a prerequisite to intervention in cases where the interest of a party and a prospective intervenor are virtually identical. Limiting intervention in these situations enables the commission to avoid undue delay and unnecessary duplication of effort.

By the same reasoning, however, the commission properly allowed the Coalition to intervene on the rate and tariff design issues because the resolution of these issues necessarily entails some groups of customers having specific interests that conflict with the residential class as a whole.[9]

In reviewing the commission's decision on the distribution of the revenue increase among the various CEI customer classes, this court will not disturb the findings and order of the commission unless it appears from the record that such findings and order are manifestly against the weight of the evidence and are so clearly unsupported by the record as to

---

[8] Since the scope of our review of a commission permissive intervention decision is the abuse of discretion standard, these factors embrace the major considerations that we elect to employ in reviewing the commission's disposition of a petition for leave to intervene. Therefore, since the abuse of discretion test is essentially one of reasonableness, it is unnecessary for this court to decide whether Ohio Adm. Code 4901-1-04 or 4901-1-11 applies to appellants' petition for leave to intervene.

[9] See *Toledo Coalition for Safe Energy* v. *Pub. Util. Comm., supra,* at fn. 4.

show misapprehension or mistake or willful disregard of duty. *Cleveland Elec. Illuminating Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 403, paragraph eight of the syllabus, certiorari denied 423 U. S. 986.

In deciding how to distribute the revenue increase the commission adopted the "base-rates-excluding-fuel" method. A review of the record reveals that: (1) this was the method recommended, at the outset of the proceedings, by the commission's staff; (2) several expert witnesses testified in favor of this method; and (3) a stipulation[10] entered into by CEI, the city of Cleveland, and the IEC supported this method.

Furthermore, the record reflects that appellants did not object to the aforementioned stipulation and did not present any evidence challenging the commission's revenue distribution, despite the fact that appellants had been granted limited intervention on this precise issue.

After assessing the voluminous documents, evidence, testimony, and competing inferences in this case, the commission decided to adopt the "base-rates-excluding-fuel" method of distributing the revenue increase. After a careful review of the record in this case, we conclude that the commission's adoption of the "base-rates-excluding-fuel" method of distributing the revenue increase is consistent with the manifest weight of the evidence and is clearly supported by the record. *Cleveland Elec. Illuminating Co.*, *supra*. See, also, *Sanders Transfer, Inc.*, *supra*, at 24.

Accordingly, for all the foregoing reasons, the order of the commission is affirmed.

*Order affirmed.*

CELEBREZZE, C. J., W. BROWN, SWEENEY, HOLMES, C. BROWN and STEPHENSON, JJ., concur.

LOCHER, J., concurs in the judgment.

STEPHENSON, J., of the Fourth Appellate District, sitting for KRUPANSKY, J.

---

[10] Stipulations entered into between some, but not all, of the parties present in a rate proceeding can be "accorded substantial weight" by the commission. *Akron* v. *Pub. Util. Comm.* (1978), 55 Ohio St. 2d 155, 157.