OHIO CONSUMERS' COUNSEL, APPELLANT, *v.* PUBLIC UTILITIES
COMMISSION OF OHIO, APPELLEE. (TWO CASES.)

[Cite as *Ohio Consumers' Counsel v. Pub. Util. Comm.,*
111 Ohio St.3d 384, 2006-Ohio-5853.]

(Nos. 2005–1621 and 2005–1679—Submitted May
10, 2006—Decided November 29, 2006.)

O'CONNOR, J.

{¶ 1} In these two consolidated public-utility cases, the Ohio Consumers' Counsel is challenging recent orders by the Public Utilities Commission of Ohio ("PUCO") that allowed FirstEnergy Corporation's three subsidiary electric companies—the Ohio Edison Company, the Cleveland Electric Illuminating Company, and the Toledo Edison Company (collectively, "FirstEnergy"), as well as the Dayton Power and Light Company—to change their accounting procedures in a way that could lead to future rate increases for the companies' customers. According to the Consumers' Counsel, the PUCO's action—even though not actually a rate increase—is nonetheless inconsistent with the statutory cap imposed by R.C. 4928.34(A)(6) and 4928.35(A) on increases in electric utility rates during the market-development period for competitive retail electric service in Ohio. The PUCO and the utility companies counter that utility rates have not been increased by the PUCO's action, and therefore the statutory cap on rates was not violated.

{¶ 2} Two other preliminary issues raised by the parties must be addressed as well: (1) whether the PUCO properly denied the Consumers' Counsel's request to intervene in the proceedings before the commission and (2) whether the appeals by the Consumers' Counsel are premature because utility rates have not been changed as a result of the PUCO's orders.

{¶ 3} For the reasons explained below, we affirm the PUCO's orders.

### Facts

{¶ 4} In October 2004, Dayton Power and Light sought permission from the PUCO to defer certain administrative charges incurred by the company as a

result of its membership in PJM Interconnection, L.L.C. In December 2004, FirstEnergy likewise sought permission from the PUCO to defer certain electricity-transmission and service-related charges that it had incurred as a result of its membership in Midwest Independent Transmission System Operator, Inc. ("Midwest ISO").

{¶ 5} Both PJM Interconnection and Midwest ISO are corporations designated by the Federal Energy Regulatory Commission ("FERC") as "regional transmission organizations." See *FPL Energy Marcus Hook, L.P. v. Fed. Energy Regulatory Comm.* (2005), 430 F.3d 441, 442, 368 U.S.App.D.C. 352; and *Pub. Serv. Comm. of Kentucky v. Fed. Energy Regulatory Comm.* (2005), 397 F.3d 1004, 1006, 365 U.S.App.D.C. 53. Those organizations "combine[ ] multiple power grids into a single transmission system," id., and each of them "controls electricity transmission assets," *FPL Energy Marcus Hook, L.P.*, 430 F.3d at 443, 368 U.S.App.D.C. 352 Once FERC has designated a corporation as a regional transmission organization, "electricity-generating plants can interconnect with transmission lines owned by [the organization] and then sell energy to one another." Id.

{¶ 6} FERC has encouraged the formation of regional transmission organizations "to address regional reliability concerns and to foster regional competition" in the wholesale electricity market. *Midwest ISO Transm. Owners v. Fed. Energy Regulatory Comm.* (2004), 373 F.3d 1361, 1364, 362 U.S.App.D.C. 314. According to FERC, those entities "provide a large and stable transmission system that reduces regional pricing disparities and creates an efficient market for new power generators." *Pub. Serv. Comm. of Kentucky*, 397 F.3d at 1006, 365 U.S.App.D.C. 53.

{¶ 7} FirstEnergy joined Midwest ISO in October 2003, and Dayton Power and Light joined PJM Interconnection in October 2004.

{¶ 8} By seeking in the proceedings below to defer charges associated with their membership in the two regional transmission organizations, FirstEnergy and Dayton Power and Light asked, in essence, that the PUCO allow them to change their accounting procedures so that the costs charged by Midwest ISO and PJM Interconnection could be recorded on the companies' books at a date after January 1, 2006, i.e., after the rate caps were no longer in effect. The electric companies also indicated in the proceedings below that they hoped to recover those costs later by securing the PUCO's approval to raise the rates that they charge their customers.

{¶ 9} The Consumers' Counsel moved to intervene in the proceedings initiated by the two companies and urged the PUCO to dismiss both companies' applications for approval of accounting-procedure changes. In both cases, the PUCO denied the Consumers' Counsel's efforts to intervene, then granted the compa-

nies' requests to change their accounting procedures and defer charges imposed on them by their regional transmission organizations between the date of the companies' applications for the deferrals and January 1, 2006. The PUCO denied the Consumers' Counsel's applications for rehearing in both cases.

{¶ 10} The causes are before us upon the Consumers' Counsel appeal from the PUCO's orders.

### Standard of Review

{¶ 11} R.C. 4903.13 provides that a PUCO order shall be reversed, vacated, or modified by this court only when, upon consideration of the record, the court finds the order to be unlawful or unreasonable. " '[T]his court will not reverse or modify a PUCO decision as to questions of fact where the record contains sufficient probative evidence to show the PUCO's determination is not manifestly against the weight of the evidence and is not so clearly unsupported by the record as to show misapprehension, mistake or willful disregard of duty.' " *Monongahela Power Co. v. Pub. Util. Comm.*, 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 29, quoting *AT & T Communications of Ohio, Inc. v. Pub. Util. Comm.* (2000), 88 Ohio St.3d 549, 555, 728 N.E.2d 371. The appellant bears the burden of demonstrating that the PUCO's decision is against the manifest weight of the evidence or is clearly unsupported by the record. Id.

{¶ 12} Although this court has "complete and independent power of review as to all questions of law" in appeals from the PUCO, *Ohio Edison Co. v. Pub. Util. Comm.* (1997), 78 Ohio St.3d 466, 469, 678 N.E.2d 922, we have explained that we may rely on the expertise of a state agency in interpreting a law where "highly specialized issues" are involved "and where agency expertise would, therefore, be of assistance in discerning the presumed intent of our General Assembly." *Consumers' Counsel v. Pub. Util. Comm.* (1979), 58 Ohio St.2d 108, 110, 12 O.O.3d 115, 388 N.E.2d 1370.

### Analysis

{¶ 13} We first address the two preliminary issues: the PUCO's denial of the Consumers' Counsel's motions to intervene and the appealability of the PUCO's orders allowing changes in accounting procedures.

#### The Motions to Intervene

{¶ 14} The Consumers' Counsel argues that the PUCO should have granted her motions to intervene in both the FirstEnergy and the Dayton Power and Light cases. The commission and the two electric companies contend instead that the PUCO properly denied both motions.

{¶ 15} Intervention in PUCO matters is governed by R.C. 4903.221, which provides that any person "who may be adversely affected" by a PUCO proceed-

ing is entitled to seek intervention in that proceeding. In ruling on a motion to intervene, the PUCO is to consider (1) the nature and extent of the prospective intervenor's interest, (2) the legal position advanced by the prospective intervenor and its probable relation to the merits of the case, (3) whether the intervention will unduly prolong or delay the proceeding, and (4) whether the prospective intervenor will significantly contribute to the full development and equitable resolution of the factual issues. R.C. 4903.221(B).

{¶ 16} Ohio Adm.Code 4901–1–11 provides additional guidance on the question, explaining that intervention "shall" be allowed by the PUCO if the prospective intervenor "has a real and substantial interest in the proceeding, and * * * is so situated that the disposition of the proceeding may, as a practical matter, impair or impede his or her ability to protect that interest, unless the person's interest is adequately represented by existing parties." The regulation's text is very similar to Civ.R. 24—the rule governing intervention in civil cases in Ohio—which "is generally liberally construed in favor of intervention." *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections* (1995), 74 Ohio St.3d 143, 144, 656 N.E.2d 1277.

{¶ 17} In both proceedings below, the PUCO denied the motions to intervene, finding that intervention was not necessary. This court applies an abuse-of-discretion standard when reviewing PUCO permissive-intervention decisions. See *Senior Citizens Coalition v. Pub. Util. Comm.* (1982), 69 Ohio St.2d 625, 628, 23 O.O.3d 515, 433 N.E.2d 583, fn. 8.

{¶ 18} We hold that the PUCO abused its discretion when it denied the motions to intervene. The Consumers' Counsel's interests were not represented by any other party to the proceedings, and there is no suggestion in the record that intervention would have unduly delayed the proceedings or caused prejudice to any party. In addition, the memoranda filed by the Consumers' Counsel in support of her motions to intervene in the two cases presented the view that the accounting changes sought by the two electric companies would adversely affect the companies' residential customers and would violate Ohio law. In light of those facts, the Consumers' Counsel should have been allowed to intervene in the two proceedings.

{¶ 19} It is true that in *Ohio Domestic Violence Network v. Pub. Util. Comm.* (1994), 70 Ohio St.3d 311, 315, 638 N.E.2d 1012, we held that R.C. 4903.221—the statute governing intervention in PUCO proceedings—"clearly contemplates intervention in quasi-judicial proceedings, characterized by notice, hearing, and the making of an evidentiary record," and when—as in the proceedings below—no hearing is held before the PUCO, "there is no right to intervene." But in that case, we cited a concern about delay, and we identified an alternative avenue through which the would-be intervenors could have sought recourse from the PUCO. In contrast, the parties in these cases have not suggested that interven-

tion by the Consumers' Counsel would have delayed the proceedings, and they have not identified any other way in which she could have raised her concerns about the accounting changes sought by FirstEnergy and Dayton Power and Light.

{¶ 20} Even if no hearing was scheduled or contemplated when the Consumers' Counsel sought to intervene, her motions and accompanying memoranda properly addressed the relevant criteria of R.C. 4903.221. In our view, whether or not a hearing is held, intervention ought to be liberally allowed so that the positions of all persons with a real and substantial interest in the proceedings can be considered by the PUCO. The Consumers' Counsel explained her interest in the cases in her motions to intervene and also explained that her views would not be adequately represented by the existing parties. In the absence of some evidence in the record calling those claims into doubt or showing that intervention would unduly prolong or delay the proceedings, intervention should have been granted.

{¶ 21} Even so, the two causes need not be remanded to the PUCO so that the Consumers' Counsel can intervene, because, according to the PUCO's orders in both cases, the PUCO took the Consumers' Counsel's filings into consideration when it made its decision. Because the PUCO concluded in both cases that no hearing was needed on the electric companies' requests for accounting changes, and because the PUCO considered all the documents presented to it by the parties and all prospective intervenors, the Consumers' Counsel's status as a nonparty had no discernable adverse effect on her efforts to advocate for a particular outcome in the two proceedings.

{¶ 22} The denial of the motions to intervene, in other words, did not prejudice the Consumers' Counsel's efforts to be heard before the PUCO. This court has explained in past cases that we "will not reverse an order of the Public Utilities Commission unless the party seeking reversal demonstrates the prejudicial effect of the order." *Tongren v. Pub. Util. Comm.* (1999), 85 Ohio St.3d 87, 92, 706 N.E.2d 1255. See, also, *Myers v. Pub. Util. Comm.* (1992), 64 Ohio St.3d 299, 302, 595 N.E.2d 873 ("this court will not reverse an order of the commission absent a showing of prejudice"). Even though the PUCO abused its discretion by refusing to let the Consumers' Counsel intervene, that action caused no prejudice because the PUCO treated the documents filed by the Consumers' Counsel no differently than the documents filed by the parties. In these circumstances, reversing the decision and remanding the cause on the intervention issue is not justified.

{¶ 23} The Consumers' Counsel's status as a nonparty could have affected her ability to pursue an appeal to this court in the two cases, however, because only a party may appeal from a PUCO decision. R.C. 4903.13. This court's rules of practice likewise permit "a party" to seek review in PUCO matters. S.Ct.Prac.R.

II(3)(B)(2). Because we find, though, that the Consumers' Counsel should have been granted party status before the PUCO, the appeals in these two cases are properly before us, and *all* of the arguments raised here by the Consumers' Counsel—not simply her challenge to the denial of her motions to intervene—may rightly be considered by this court now.

## Appealability of the Orders

{¶ 24} A second procedural issue in these appeals is raised by the PUCO, which argues that its orders in the two proceedings were not final orders and therefore were not appealable. The orders at issue in these two cases simply allowed FirstEnergy and Dayton Power and Light to change their accounting procedures, the PUCO argues, and therefore the Consumers' Counsel should not be allowed to appeal now, but should instead be forced to wait until the commission has approved a change in the rates charged to those companies' customers.

{¶ 25} Basically, the PUCO argues that the orders are not final, because later commission orders will result in more direct effects on consumers. We disagree. The fact that subsequent orders may result in more direct effects does not mean that the orders allowing accounting-procedure changes are not final. Thus, the Consumers' Counsel may argue in these appeals that consumers have already been harmed by PUCO actions that she claims were unreasonable or unlawful.

## The Merits of the Consumers' Counsel's Challenge to the Accounting Changes

{¶ 26} The Consumers' Counsel contends that the accounting changes approved by the PUCO—allowing the two electric companies to wait until after January 1, 2006, to list on their books certain costs billed to them by their respective regional transmission organizations—are inconsistent with state statutes and prior PUCO decisions.

{¶ 27} The Consumers' Counsel does not dispute the PUCO's authority to "establish a system of accounts to be kept by public utilities" and to "prescribe the forms of accounts, records, and memorandums to be kept" by those public utilities. R.C. 4905.13. The question in these appeals is whether the particular accounting changes authorized by the PUCO in the proceedings below are consistent with R.C. 4928.34(A)(6) and 4928.35(A), which impose a cap on the rates charged by electric utilities during the "market development period."

{¶ 28} The key statutory provisions state as follows:

{¶ 29} "[T]he total of all unbundled components in the rate unbundling plan are capped and shall equal during the market development period, except as specifically provided in this chapter, the total of all rates and charges in effect under the

applicable bundled schedule of the electric utility * * * in effect on [October 4, 1999]." R.C. 4928.34(A)(6).

{¶ 30} "The schedules [listing an electric utility's unbundled rates] shall be in effect for the duration of the utility's market development period, shall be subject to the cap specified in [R.C. 4928.34(A)(6)], and shall not be adjusted during that period by the public utilities commission except * * * as otherwise authorized by federal law * * *." R.C. 4928.35(A).

{¶ 31} Definitions of some of the terms in those statutes make those provisions more clear. An electric utility has "unbundled" its rates if it has "separate[d] the cost of transmission from the cost of electrical energy when billing its retail customers." *New York v. Fed. Energy Regulatory Comm.* (2002), 535 U.S. 1, 4, 122 S.Ct. 1012, 152 L.Ed.2d 47. Once the General Assembly's plan for creating a competitive market for retail electric service in Ohio took effect in 1999, electric utility companies were required to file "rate unbundling plans" specifying the separate electric generation, transmission, and distribution services each of them was prepared to offer to the public. See R.C. 4928.31.

{¶ 32} The "market development period" mentioned in the statutes above is a period defined in R.C. 4928.01(A)(17), 4928.01(A)(29), and 4928.40 as running from January 1, 2001, until no later than December 31, 2005. During that time, each electric company's retail rates were "capped and frozen," but once a company's market-development period ends, it "is entitled to charge market-based retail-generation rates that permit it to recover its cost of purchasing power at wholesale for resale to its customers." *Monongahela Power Co. v. Pub. Util. Comm.*, 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 2.

{¶ 33} By allowing FirstEnergy and Dayton Power and Light to record certain costs on their books after the market-development period had ended rather than during the market-development period, when those costs were actually incurred, the Consumers' Counsel argues, the PUCO is allowing the companies to raise the rates charged to their customers after the market-development period based on charges incurred during the market-development period. That action is unlawful, according to the Consumers' Counsel, who argues that the "General Assembly did not intend its rate cap to be circumvented by the deferral of costs incurred during the rate cap period for recovery after the rate cap period."

{¶ 34} But nothing in R.C. 4928.34(A)(6) or 4928.35(A) bars the PUCO from authorizing electric utilities to change their accounting procedures during the market-development period. The statutes cap the rates that may be charged to customers during that period, but they do not prohibit the kind of accounting changes that the PUCO approved.

{¶ 35} To be sure, as the Consumers' Counsel contends, FirstEnergy and Dayton Power and Light, having secured the accounting changes, will likely ask

the PUCO for permission to raise their customers' rates after the market-development period to cover the costs that the PUCO has allowed the companies to defer during that period. We agree with the Consumers' Counsel that open-ended accounting changes allowing electric companies to evade the rate cap by shifting all expenses incurred during the market-development period to a date after that period would circumvent the intent of the General Assembly in capping rates during the market-development period.

{¶ 36} The charges that the PUCO has allowed these two companies to defer, however, are special ones, unlike most other costs incurred by electric utilities during the market-development period. The deferred charges were incurred by the companies as a result of their membership in regional transmission organizations approved by the FERC. As even the Consumers' Counsel concedes, Ohio law requires electric companies to join regional transmission organizations, see R.C. 4928.12 and Ohio Adm.Code 4901:1–20–17, and a regulation promulgated by FERC and codified at Section 35.34, Title 18, C.F.R. requires most public utilities that "own[ ], operate[ ] or control[ ] facilities used for the transmission of electric energy in interstate commerce" to participate in a regional transmission organization or provide FERC with a detailed explanation of their failure to do so, see Section 35.34(c) and (g), Title 18, C.F.R. As a result, FERC has noted its "expectation that all individual public utilities (and others, as well) will join [regional transmission organizations]." 65 F.R. 65757, 65765, 2000 WL 1636587, fn. 68.

{¶ 37} Membership in regional transmission organizations is not free, for those entities impose charges for the use of their electricity-transmission services in accordance with FERC-approved tariff schedules. See Section 35.34(k)(1), Title 18, C.F.R.; Federal Energy Guidelines (Sept. 16, 1998), 84 F.E.R.C. ¶ 61,231, 62,166, 1998 WL 770197. In addition, FERC has imposed annual charges since 2001 on entities that transmit electric service, see Section 382.201, Title 18, C.F.R., and has explained that regional transmission organizations must pay those charges if they have "taken over from individual public utilities the function of providing transmission service." 65 F.R. at 65765. Significantly, FERC has also explained that "the annual charge assessments are costs that can be recovered in transmission rates as a legitimate cost of providing transmission service." 65 F.R. at 65766.

{¶ 38} The costs incurred, then, by FirstEnergy and Dayton Power and Light as a result of their membership in regional transmission organizations are costs authorized by FERC, the independent federal agency that Congress vested with "primary responsibility of carrying out the provisions of the Federal Power Act, 16 U.S.C. 791a–825r." *Wisconsin v. Fed. Energy Regulatory Comm.* (1997), 104 F.3d 462, 471, 322 U.S.App.D.C. 419. Those costs, in short, are authorized by

federal law, and R.C. 4928.35(A) expressly allows the PUCO, when "authorized by federal law," to adjust electric utilities' rate schedules during the market-development period. Although the PUCO did not in fact adjust any rates in the proceedings below, the statutory provision allowing federally authorized rate adjustments during the market-development period would have entitled the PUCO to do so. In our view, that statutory provision therefore certainly gave the PUCO the authority to take the smaller step of authorizing the kind of accounting changes sought by FirstEnergy and Dayton Power and Light in these cases, even if those deferrals are a prelude to possible rate increases for the companies' customers after the market-development period has ended.

### The Consumers' Counsel's Contrary Arguments

{¶ 39} The Consumers' Counsel does not challenge the PUCO's finding that the deferred charges were authorized by federal law, but instead argues that any rate increases approved by the PUCO during the market-development period—or, as in this case, any accounting changes during the market-development period that may lead to later rate increases—must be offset by corresponding rate decreases on other components of the affected utility's rate schedule. That argument, however, does not square with R.C. 4928.35(A).

{¶ 40} While it is true that R.C. 4928.35(A) states that an electric utility's approved rate schedule "shall be in effect for the duration of the utility's market development period [and] shall be subject to the [R.C. 4928.34(A)(6) ] cap" on rates, it is also true that, as discussed above, the statute allows adjustments in those rate schedules and exceptions to the rate cap when "authorized by federal law." When, as in these cases, an electric utility has incurred charges authorized by FERC during the utility's market-development period, the statute allows the PUCO to adjust the company's rate schedule upward to reflect those federally authorized charges without regard to the rate cap.

{¶ 41} There would be no reason for the General Assembly to include the exception in R.C. 4928.35(A) for federally authorized adjustments—and no reason for an electric utility to apply for such an adjustment—if every upward rate adjustment in one unbundled component of the utility's rates had to be matched by a corresponding downward rate adjustment in another component. In other words, the General Assembly did not carve out an exception allowing for rate increases during the market-development period for federally authorized charges only to gut that exception by insisting that the affected utility lower its rates by a corresponding amount on other components of its services during the market-development period. Certainly the PUCO did not read R.C. 4928.35(A) as calling for utilities to take that step, and "[d]ue deference should be given to statutory interpretations by an agency that has accumulated substantial expertise and to which the General Assembly has delegated enforcement responsibility." *Weiss v.*

*Pub. Util. Comm.* (2000), 90 Ohio St.3d 15, 17–18, 734 N.E.2d 775, citing *Collinsworth v. W. Elec. Co.* (1992), 63 Ohio St.3d 268, 272, 586 N.E.2d 1071.

{¶ 42} The Consumers' Counsel also contends that the PUCO acted unlawfully by interpreting the relevant statutes differently in these cases than it did in earlier proceedings. That argument need not detain us for long, however, because this court has "complete and independent power of review as to all questions of law" in appeals from the PUCO. *Luntz Corp. v. Pub. Util. Comm.* (1997), 79 Ohio St.3d 509, 512, 684 N.E.2d 43. In other words, we are not bound by the PUCO's precedent on questions of law.

{¶ 43} In any event, the PUCO's entry denying rehearing in the FirstEnergy case below explained that the earlier proceedings in which the commission declined to authorize other electric utilities to defer certain costs during the market-development period were resolved "based upon the facts specific to each case rather than as a matter of law." In one of those earlier decisions, in fact, the PUCO stated, "Nothing in this decision is intended to be precedent-setting * * *." *In the Matter of the Application of Columbus Southern Power Company and Ohio Power Company for Approval of a Post–Market Development Rate Stabilization Plan* (Jan. 26, 2005), No. 04–169–EL–UNC, 2005 WL 351295.

{¶ 44} A PUCO order is unlawful if it is inconsistent with relevant statutes or with the state or federal constitutions. That an order is inconsistent with earlier PUCO rulings on legal questions does not make that order unlawful. If this court determines that the PUCO's orders in the proceedings below were permitted by Ohio law, then those orders should be affirmed, notwithstanding earlier PUCO orders. For the reasons explained above, we hold that the PUCO interpreted and applied the relevant statutes in a lawful and proper way in these cases, and its orders should therefore be affirmed.

{¶ 45} Finally, the Consumers' Counsel argues that the PUCO's orders allowing FirstEnergy and Dayton Power and Light to defer certain charges resulting from their membership in regional transmission organizations are inconsistent with earlier PUCO orders involving those same companies. But as the PUCO rightly explained when it denied rehearing in the proceedings below, the earlier orders on which the Consumers' Counsel relies did not prohibit the deferral of costs like those at issue in these cases.

{¶ 46} Those orders (*In the Matter of the Application of FirstEnergy Corp. on Behalf of Ohio Edison Company, the Cleveland Electric Illuminating Company, and the Toledo Edison Company for Approval of Their Transition Plans and for Authorization to Collect Transition Revenues* (July 19, 2000), No. 99–1212–EL–ETP, 2000 WL 1791792, and *In the Matter of the Continuation of the Rate Freeze and Extension of the Market Development Period for the Dayton Power and Light Company* (Sept. 2, 2003), No. 02–2779–EL–ATA, 2003 WL 22142843)

simply do not address cost deferrals during the companies' market-development periods, and they do not contain any limitation on the PUCO's authority under R.C. 4928.35(A) to adjust rates during the market-development period when authorized by federal law. The Consumers' Counsel has in fact cited no language from the earlier orders that could reasonably be interpreted as barring the PUCO from authorizing the accounting changes sought by FirstEnergy and Dayton Power and Light in the proceedings below.

## Conclusion

{¶ 47} For the reasons explained above, we hold (1) that the PUCO abused its discretion by refusing to let the Consumers' Counsel intervene in the proceedings before the commission (but since the Consumers' Counsel was not prejudiced by that decision, the orders need not be reversed on that issue), (2) that the PUCO orders were final and appealable, and (3) that the PUCO orders—which authorized FirstEnergy and Dayton Power and Light to change their accounting procedures and to defer certain federally authorized charges until after the companies' market-development periods had ended—were not unreasonable or unlawful. The PUCO's orders are therefore affirmed in both cases.

Decisions affirmed.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER, J., concurs in part and dissents in part.

---

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 48} I concur in the majority's holdings on the procedural aspects of this case involving the motions to intervene and the appealability of the commission's orders. I dissent from the substantive holding regarding the legality of the commission's allowing electric utilities to defer accounting of certain charges until after the market-development period.

{¶ 49} The commission is complicit here in an accounting legerdemain that runs contrary to the purpose of the rate cap imposed by R.C. 4928.34(A)(6) during the market-development period. The cap is meaningless if utilities can simply charge consumers for costs incurred during the market-development period after the expiration of the period. R.C. 4928.35(A) provides the means for electric utilities to seek a rate-schedule adjustment from the commission as "authorized by federal law," i.e., for costs imposed by the Federal Energy Regulatory Commission, during the period that the cap is in place. The commission had the statutory power to make that adjustment during the market-development period, but the utilities did not request it. What the utilities asked for here from the

commission, it could not give. Moreover, the commission should not be in the practice of abetting such questionable accounting practices.

{¶ 50} Since the commission lacked the authority to allow the deferral of the costs at issue, I would reverse.

Janine L. Migden–Ostrander, Ohio Consumers' Counsel, and Kimberly W. Bojko, Jeffrey L. Small, and Larry S. Sauer, Assistant Consumers' Counsel, for appellant.

Jim Petro, Attorney General, Duane Luckey, Senior Deputy Attorney General, and Steven T. Nourse and Thomas G. Lindgren, Assistant Attorneys General, for appellee.

Jones Day and Helen L. Liebman; and Kathy J. Kolich, for intervening appellee FirstEnergy Corporation in case No. 2005–1621.

Jones Day and Helen L. Liebman, for intervening appellee Dayton Power and Light Company in case No. 2005–1679.