NURSING CARE MANAGEMENT OF AMERICA, INC.,
d.b.a. Pataskala Oaks Care Center, Appellee,

v.

OHIO CIVIL RIGHTS COMMISSION, Appellant.

[Cite as *Nursing Care Mgt. of Am., Inc. v. Ohio Civ. Rights Comm.*, 181 Ohio App.3d 632, 2009-Ohio-1107.]

Court of Appeals of Ohio,
Fifth District, Licking County.

No. 08CA0030.

Decided March 11, 2009.

The Dickerson Law Group, P.A., Brian E. Dickerson, and Jonathan R. Secrest, for appellee.

Richard Cordray, Attorney General, and Patrick M. Dull, Assistant Attorney General, for appellant.

Gregory A. Gordillo, for amicus curiae the Ohio Employment Lawyers Association.

---

DELANEY, Judge.

{¶ 1} The Ohio Civil Rights Commission ("commission") appeals the February 11, 2008 judgment entry of the Licking County Court of Common Pleas reversing the final order of the commission in this pregnancy-discrimination case. For the reasons that follow, we reverse the judgment of the common pleas court and affirm the final order of the commission.

{¶ 2} The parties stipulated to the following facts:

{¶ 3} Tiffany McFee was hired by Pataskala Oaks as a licensed practical nurse on June 9, 2003. At the time of McFee's hire, and at all relevant times, Pataskala Oaks had a leave policy that permitted 12 weeks of leave for those employees with at least one year of service. The leave policy is contained in its employee handbook, which McFee received upon beginning employment.

{¶ 4} About eight months later, on January 26, 2004, McFee provided Pataskala Oaks with a physician's note, which stated that she was medically unable to work due to pregnancy-related swelling. The physician's note stated that McFee could return to work six weeks following her delivery. McFee gave birth a few days later, on February 1, 2004.[1]

{¶ 5} Pataskala Oaks terminated her three days after the birth of her child, on February 4, 2004. McFee was terminated because she did not qualify for leave

---

1. Assuming a normal gestation period of 38–40 weeks, McFee was five to seven weeks pregnant at the time she began employment with Pataskala Oaks.

under the leave policy, because at the time of her request for leave, McFee had been employed for less than one year.

{¶ 6} McFee was able to return to work on March 15, 2004, six weeks after giving birth. Pataskala Oaks's director of nursing contacted McFee on February 25, 2004, and left a telephone message informing McFee that a full-time day-shift position at Pataskala Oaks was available and instructed McFee to contact her if she was interested. McFee never returned the call. At all times after February 25, 2004, Pataskala Oaks would have rehired McFee; however, McFee never contacted Pataskala Oaks.

{¶ 7} Although McFee applied for several jobs after March 15, 2004, she was unsuccessful in obtaining employment until November 19, 2004. On that day, McFee was hired as a licensed practical nurse at Adam's Lane Care Center, where she continues to be employed.

## STATEMENT OF THE CASE

{¶ 8} McFee filed a charge affidavit with the Ohio Civil Rights Commission on March 2, 2004, alleging that she had been unlawfully terminated due to her pregnancy. After the commission received the charge, it investigated the case and found it probable that Pataskala Oaks had violated R.C. 4112. After conciliation efforts failed, the commission issued Administrative Complaint No. 9816.

{¶ 9} All relevant facts were stipulated and submitted to an administrative law judge ("ALJ"). On December 19, 2006, the ALJ recommended that the commission dismiss the complaint. The Ohio Attorney General's office filed objections to this recommendation, arguing that the ALJ's analysis was legally flawed.

{¶ 10} Oral argument was held on February 1, 2007. Subsequently, the commission rejected the ALJ's recommendation and issued a final order on March 1, 2007. The commission held that the termination of McFee's employment was due simply to her need for maternity leave and that this violated Ohio's laws against pregnancy discrimination.

{¶ 11} Pataskala Oaks filed a petition for judicial review with the Licking County Court of Common Pleas on April 2, 2007. After briefing, the lower court issued a judgment entry on February 11, 2008, reversing the commission. The commission filed a timely notice of appeal with this court on March 10, 2008.

{¶ 12} The commission raises two assignments of error:

{¶ 13} "I. The court of common pleas erred in holding that the termination of a pregnant employee solely due to her need for maternity leave is not a

termination 'because of pregnancy.' (Judgment Entry, P. 5–8, Attachment 1 of Appendix.)

{¶ 14} "II. The court of common pleas erred when it applied the McDonnell Douglas prima facie burden-shifting analysis in a case involving an employer's failure to satisfy its affirmative duty to provide maternity leave for a reasonable period of time. (Judgment Entry, P. 3–5, Attachment 1 of Appendix.)"

{¶ 15} In addressing and analyzing these assignments of errors, we must first set forth our standard of review. Because the parties have stipulated to the facts, there was no conflicting evidence before the commission requiring resolution. Rather, the issue before the commission involved the interpretation and application of law to the evidence. On the question of whether an agency's order was in accordance with law, an appellate court's review is plenary. *Leslie v. Ohio Dept. of Dev.*, 171 Ohio App.3d 55, 2007-Ohio-1170, 869 N.E.2d 687, ¶ 44, citing *Univ. Hosp. College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 343, 587 N.E.2d 835; *HCMC, Inc. v. Ohio Dept. of Job & Family Servs.*, 179 Ohio App.3d 707, 2008-Ohio-6223, 903 N.E.2d 660, ¶ 17.

{¶ 16} We will simultaneously address the legal arguments presented by the commission in both assignments of error.

{¶ 17} It is the position of the commission that under Ohio law, an employer must provide reasonable maternity leave regardless of its leave policy. Pataskala Oaks contends that Ohio law allows an employer to place a length-of-service requirement on leave time provided to pregnant employees, as long as that length-of-service requirement is evenly applied. The trial court agreed with the position of Pataskala Oaks and reversed the commission.

{¶ 18} In their briefs to this court, the parties agree that the resolution of this issue depends upon the application and interpretation of R.C. 4112.02 and the implementing regulations set forth in Ohio Adm.Code 4112–5–05 regarding pregnancy discrimination.

{¶ 19} R.C. 4112.02 provides as follows:

{¶ 20} "It shall be an unlawful discriminatory practice:

{¶ 21} "(A) For any employer, because of the race, color, religion, sex, * * * national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

{¶ 22} R.C. 4112.01 provides as follows:

{¶ 23} "(B) For the purposes of divisions (A) to (F) of section 4112.02 of the Revised Code, the terms 'because of sex' or 'on the basis of sex' include, but are

not limited to, because of or on the basis of pregnancy, any illness arising out of and occurring during the course of pregnancy, childbirth, or related medical conditions. Women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, * * *."

{¶ 24} R.C. 4112.08 also requires that Chapter 4112 "shall be construed liberally for the accomplishment of its purpose, and any law inconsistent with any provision of this chapter shall not apply." See also R.C. 1.11 ("Remedial laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining justice").

{¶ 25} The parties stipulated that Pataskala Oaks is an "employer" as defined by R.C. 4112.01(A)(2) and thus is subject to R.C Chapter 4112.

{¶ 26} The administrative regulations carrying out the prohibition against discrimination in Ohio are set forth in Ohio Adm.Code 4112–5. The administrative regulations apply to sex and disability discrimination.

{¶ 27} Ohio Adm.Code 4112–5–01 provides:

{¶ 28} "The purpose of the following rules and regulations on discrimination is to assure compliance with the provisions of Chapter 4112 of the Revised Code. These rules express the Ohio civil rights commission's interpretation of language in Chapter 4112 of the Revised Code and indicate factors which the commission will consider in determining whether or not there has been a violation of the law. Such rules apply to every action which falls within the coverage of Chapter 4112 of the Revised Code, and are not intended to either expand or contract the coverage of the Chapter 4112 of the Revised Code."

{¶ 29} In regards to sex discrimination, Ohio Adm.Code 4112–5–05 states:

{¶ 30} "(G) Pregnancy and childbirth.

{¶ 31} "(1) A written or unwritten employment policy or practice which excludes from employment applicants or employees because of pregnancy is a prima facie violation of the prohibitions against sex discrimination contained in Chapter 4112 of the Revised Code.

{¶ 32} "(2) Where termination of employment of an employee who is temporarily disabled due to pregnancy or a related medical condition is caused by an employment policy under which insufficient or no maternity leave is available, such termination shall constitute unlawful sex discrimination.

{¶ 33} "(3) Written and unwritten employment policies involving commencement and duration of maternity leave shall be so construed as to provide for individual capacities and the medical status of the women involved.

{¶ 34} "(4) Employment policies involving accrual of seniority and all other benefits and privileges of employment, including company-sponsored sickness and accident insurance plans, shall be applied to disability due to pregnancy and childbirth on the same terms and conditions as they are applied to other temporary leaves of absences of the same classification under such employment policies.

{¶ 35} "(5) Women shall not be penalized in their conditions of employment because they require time away from work on account of childbearing. When, under the employer's leave policy the female employee would qualify for leave, then childbearing must be considered by the employer to be a justification for leave of absence for female employees for a reasonable period of time. For example, if the female meets the equally applied minimum length of service requirements for leave time, she must be granted a reasonable leave on account of childbearing. Conditions applicable to her leave (other than its length) and to her return to employment shall be in accordance with the employer's leave policy.

{¶ 36} "(6) Notwithstanding paragraphs (G)(1) to (G)(5) of this rule, if the employer has no leave policy, childbearing must be considered by the employer to be a justification for leave of absence for a female employee for a reasonable period of time. Following childbirth, and upon signifying her intent to return within a reasonable time, such female employee shall be reinstated to her original position or to a position of like status and pay, without loss of service credits."

{¶ 37} We note that R.C. 4112.02 is similar to the federal Pregnancy Discrimination Act ("PDA") provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000 et seq., and the Ohio Supreme Court has held that federal case law interpreting Title VII is generally applicable to cases involving alleged violations of R.C. Chapter 4112. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 421 N.E.2d 128. The purpose of Title VII is "to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of * * * employees over other employees." *Griggs v. Duke Power Co.* (1971), 401 U.S. 424, 429–430, 91 S.Ct. 849, 28 L.Ed.2d 158 (the disparate impact of facially neutral employment policies "cannot be maintained if they operate to 'freeze' the status quo of prior discriminatory employment practices").

{¶ 38} In *California Fed. S. & L. Assn. v. Guerra* (1987), 479 U.S. 272, 285, 107 S.Ct. 683, 93 L.Ed.2d 613, the U.S. Supreme Court noted that "Congress intended the PDA to be 'a floor beneath which pregnancy disability benefits may not drop—not a ceiling above which they may not rise.'" In *Guerra*, the high court analyzed a California statute that required employers to provide female employees with unpaid pregnancy disability leave of up to four months. The state agency authorized to interpret the statute, the Fair Employment and

Housing Commission, construed the statute to require California employers to reinstate an employee returning from such pregnancy leave to the job she previously held, unless it is no longer available due to business necessity. In the latter case, the employer must make a reasonable, good-faith effort to place the employee in a substantially similar job.

{¶ 39} A California employer and trade associations sought a declaration that the statute was inconsistent with and was preempted by Title VII. The district court agreed, finding that California state law and policies of interpretation and enforcement that require preferential treatment of female employees disabled by pregnancy, childbirth, or related medical conditions are pre-empted by Title VII and are null, void, invalid and inoperative under the Supremacy Clause of the United States Constitution. *California Fed. S. & L. Assn. v. Guerra* (Mar. 21, 1984), C.D.Cal. No. 83–4927R, 1984 WL 943.

{¶ 40} The United States Court of Appeals for the Ninth Circuit reversed. *California Fed. S. & L. Assn. v. Guerra* (C.A.9, 1985), 758 F.2d 390. It held that "the district court's conclusion that [the law] discriminates against men on the basis of pregnancy defies common sense, misinterprets case law, and flouts Title VII and the PDA." (Footnote omitted.) Id. at 393. The court of appeals found that the PDA does not "demand that state law be blind to pregnancy's existence." Id. at 395. Because it found that the California statute furthers the goal of equal employment opportunity for women, it concluded: "Title VII does not preempt a state law that guarantees pregnant women a certain number of pregnancy disability leave days, because this is neither inconsistent with, nor unlawful under, Title VII." Id. at 396.

{¶ 41} The U.S. Supreme Court affirmed. Justice Marshall delivered the court's opinion and noted that the California law promotes equal-employment opportunity by ensuring that women will not lose their jobs on account of pregnancy disability. *Guerra*, 479 U.S. 272, 288, 107 S.Ct. 683, 93 L.Ed.2d 613. The law "does not compel California employers to treat pregnant workers better than other disabled employees; it merely establishes benefits that employers must, at a minimum, provide to pregnant workers. Employers are free to give comparable benefits to other disabled employees, thereby treating 'women affected by pregnancy' no better than 'other persons not so affected but similar in their ability or inability to work.'" *Guerra* at 289, 107 S.Ct. 683, 93 L.Ed.2d 613.

{¶ 42} Importantly, the U.S. Supreme Court also stated: "The statute is narrowly drawn to cover only the period of *actual physical disability* on account of pregnancy, childbirth, or related medical conditions. Accordingly, unlike the protective labor legislation prevalent earlier in this century, [the statute] does not reflect archaic or stereotypical notions about pregnancy and the abilities of pregnant workers. A statute based on such stereotypical assumptions would, of

course, be inconsistent with Title VII's goal of equal employment opportunity." (Footnote omitted; emphasis sic.) Id. at 290, 107 S.Ct. 683, 93 L.Ed.2d 613.

{¶ 43} Justice Stevens wrote in his concurring opinion: "In *Steelworkers v. Weber*, 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979), the Court rejected the argument that Title VII prohibits all preferential treatment of the disadvantaged classes that the statute was enacted to protect. The plain words of Title VII, which would have led to a contrary result, were read in the context of the statute's enactment and its purposes. In this case as well, the language of the Act seems to mandate treating pregnant employees the same as other employees. I cannot, however, ignore the fact that the PDA is a definitional section of Title VII's prohibition against gender-based discrimination. Had *Weber* interpreted Title VII as requiring neutrality, I would agree * * * that the PDA should be interpreted that way as well. But since the Court in *Weber* interpreted Title VII to draw a distinction between discrimination *against* members of the protected class and special preference *in favor of* members of that class, I do not accept the proposition that the PDA requires absolute neutrality. * * * This is not to say, however, that all preferential treatment of pregnancy is automatically beyond the scope of the PDA. Rather, as with other parts of Title VII, preferential treatment of the disadvantaged class is only permissible so long as it is consistent with 'accomplish[ing] the goal that Congress designed Title VII to achieve.'" (Footnotes omitted; emphasis sic.) Id. at 294, 107 S.Ct. 683, 93 L.Ed.2d 613, quoting *United Steelworkers of Am., AFL–CIO–CLC v. Weber* (1979), 443 U.S. 193, 204, 99 S.Ct. 2721, 61 L.Ed.2d 480.

■ {¶ 44} In order to accomplish the goal of the PDA to protect a woman's right to both work and have a family, the commission contends that Ohio has adopted a "very sensible approach"—maternity leave must be provided for a "reasonable period of time" as set forth in Ohio Adm.Code 4112–5–05(G). Specifically, the commission relies upon provision (G)(2), stated above, in concluding that Pataskala Oaks committed unlawful sex discrimination because it terminated McFee when no maternity leave was available within the first year of employment.

{¶ 45} Pataskala Oaks, on the other hand, contends that provision (G)(5) permits it to terminate McFee because she did not qualify for leave under its leave policy. Pataskala Oaks argues that the commission's reliance upon provision (G)(2) is misplaced because it had a leave policy that was facially neutral because it draws no distinction between pregnant and nonpregnant employees. Pataskala Oaks argues that had McFee sought leave for a reason other than pregnancy, she still would have been terminated.

{¶ 46} We begin our analysis of the parties' positions by making the following observations: first, it is undisputed that no maternity leave was available to

McFee in her first year of employment at Pataskala Oaks; second, McFee was temporarily disabled due to pregnancy and childbirth; and third, Pataskala Oaks did not consider childbearing a justification for leave of absence within McFee's first year of employment.

{¶ 47} At this juncture, we are mindful of the longstanding accepted principle that a reviewing court must give deference to an administrative agency's interpretation of its own rules and regulations when such an interpretation is reasonable and consistent with the plain language of the statute and rule. *HCMC, Inc. v. Ohio Dept. of Job & Family Servs.*, 179 Ohio App.3d 707, 2008-Ohio-6223, 903 N.E.2d 660, ¶ 24; *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 111 Ohio St.3d 384, 2006-Ohio-5853, 856 N.E.2d 940. And, as noted earlier, the commission promulgated Ohio Adm.Code 4112–5 to "express the Ohio civil rights commission's interpretation of language in Chapter 4112 of the Revised Code and [to] indicate factors which the commission will consider in determining whether or not there has been a violation of the law." Ohio Adm.Code 4112–5–01.

{¶ 48} Upon review, this court finds that the language set forth in Ohio Adm.Code 4112–5–05(G) is unambiguous; therefore, we apply the plain and ordinary meaning to the words as written. The only provision in Ohio Adm.Code 4112–5–05(G) that specifically applies to termination of employment is provision (G)(2). It explicitly provides that termination of an employee disabled due to pregnancy is prohibited if the employer provides no maternity leave or insufficient maternity under its employment policy. In this case, it is undisputed that Pataskala Oaks had no maternity leave available to McFee at the time of her pregnancy disability. Therefore, the commission is correct in relying on provision (G)(2).

{¶ 49} Pataskala Oaks does not address provision (G)(2). Rather, it claims that provision (G)(5), which pertains to a woman's "conditions of employment" permits it to terminate McFee because she did not qualify for leave.[2] We disagree. As an initial matter, we find that the common usage of "termination" ordinarily is not associated with a "condition" of employment. Rather, it signifies the end of employment, not the continuation of it to which any "conditions" would apply. Second, nowhere in provision (G)(5) is termination authorized if an employee does

---

2. Pataskala Oaks also contends that a ruling by a hearing examiner in *Johnson v. Watkins Motor Lines, Inc.* (Oct. 3, 2001), Ohio Civ. Rights Comm., authorized a similar leave policy and specifically endorses minimum-length-of-service requirements. As this court's review is plenary, we are not bound by the hearing examiner's ruling on questions of law. See also *Ohio Consumers' Counsel v. Public Utils. Comm.*, 111 Ohio St.3d 384, 2006-Ohio-5853, 856 N.E.2d 940, at ¶ 42–43. Pataskala Oaks' reliance on *Piraino v. Internatl. Orientation Resources, Inc.* (C.A.7, 1998), 137 F.3d 987, also is misplaced. In that case, the court did not address any state laws similar to Ohio's or a state's ability to offer broader protections than the PDA.

not meet a length-of-service requirement. Rather, it expressly provides that "[w]omen shall not be penalized in their conditions of employment because they require time away from work on account of childbearing." Not surprisingly, Pataskala Oaks does not address this first sentence in provision (G)(5). Obviously, one of the greatest penalties in the employment relationship is termination.

{¶ 50} We also find that the commission's interpretation is consistent with goals of the PDA and R.C. 4112.02 by promoting equal-employment opportunity by ensuring that women will not lose their jobs on account of pregnancy disability. It ensures that a female employee is not put in a position of choosing between her job and the continuation of her pregnancy, a dilemma that would never face a male employee in the first year of employment at Pataskala Oaks. Both sexes are entitled to have a family without losing their jobs; to hold otherwise would be to completely ignore the plain language of Ohio Adm.Code 4112–5–05(G)(2).

{¶ 51} Other Ohio court decisions support this same analysis. See *Asad v. Continental Airlines, Inc.* (N.D.Ohio 2004), 328 F.Supp.2d 772 ("The purpose of Title VII, including the PDA, is 'to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of * * * employees over other employees.' *Guerra,* 479 U.S. at 288, 107 S.Ct. 683, 93 L.Ed.2d 613, [quoting *Griggs v. Duke Power Co.* (1971), 401 U.S. 424, 429–430, 91 S.Ct. 849, 28 L.Ed.2d 158.] As demonstrated by its legislative history, the PDA was enacted to 'guarantee women the basic right to participate fully and equally in the workforce, without denying them the fundamental right to full participation in family life.' Id. at 289, 107 S.Ct. 683, 93 L.Ed.2d 613; *Johnson Controls,* 499 U.S. at 204, 111 S.Ct. 1196, 113 L.Ed.2d 158 (explaining that '[w]omen as capable of doing their jobs as their male counterparts may not be forced to choose between having a child and having a job'). With the PDA, Congress made evident that it was protecting the decisional autonomy of women to become pregnant and to work while pregnant. *Johnson Controls,* 499 U.S. at 205–207, 111 S.Ct. 1196, 113 L.Ed.2d 158. Because the PDA is specifically designed to provide relief to working women and to end discrimination against pregnant workers, it does not preclude preferential treatment of pregnant workers. *Guerra* at 285–286, 107 S.Ct. 683, 93 L.Ed.2d 613; *Harness v. Hartz Mountain Corp.* (C.A.6, 1989), 877 F.2d 1307, 1310").

{¶ 52} See also *Woodworth v. Concord Mgt. Ltd.* (S.D.Ohio 2000), 164 F.Supp.2d 978. "The Ohio Administrative Code plainly indicates that new mothers 'must be granted a reasonable leave on account of childbearing.' Ohio Admin. Code § 4112–5–05(G)(5) * * * Denial of maternity leave mandated by the Ohio Administrative Code 'is, in effect, terminating the employee because of her pregnancy.'" Id. at 985, quoting *Marvel Consultants, Inc. v. Ohio Civ. Rights*

*Comm.* (1994), 93 Ohio App.3d 838, 841, 639 N.E.2d 1265. *Frank v. Toledo Hosp.* (1992), 84 Ohio App.3d 610, 617, 617 N.E.2d 774 ("The purpose of Ohio Adm.Code 4112–5–05(G)(2) and (6) is clearly to provide substantial equality of employment opportunity by prohibiting an employer from terminating a female worker because of pregnancy without offering her a leave of absence, even if no disability leave is available generally to employees").

{¶ 53} In this case, Pataskala Oaks does not deny that McFee requested maternity leave and that it terminated McFee without providing her with maternity leave for a reasonable period of time. Pursuant to Ohio Adm.Code 4112–05–05(G)(2) such termination "shall constitute unlawful sex discrimination." We agree with the commission that motive is irrelevant in light of Ohio's requirement for maternity leave for a "reasonable period of time." Therefore, direct evidence of pregnancy discrimination has been presented by McFee, and her claim is not subject to the now-familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, and revisited in *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207, which applies in cases in which claims are not premised on direct evidence of discrimination.

{¶ 54} Consistent with the weight of authority, we find that the commission interpreted and applied the relevant statutes in a lawful and proper way, and its final order should therefore be affirmed.

{¶ 55} The commission's first and second assignments of error are sustained.

Judgment reversed.

Hoffman, P.J., and Farmer, J., concur.