WOLFF, Appellee,

v.

OHIO DEPARTMENT OF JOB AND FAMILY SERVICES, Appellant.

[Cite as *Wolff v. Dept. of Job & Family Servs.*, 165 Ohio App.3d 118, 2006-Ohio-214.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 05AP–568.

Decided Jan. 19, 2006.

Browning & Meyer Co., L.P.A., and William J. Browning, for appellee.

Jim Petro, Attorney General, and Anne Light Hoke, for appellant.

McGRATH, Judge.

{¶ 1} Appellant, Ohio Department of Job and Family Services ("ODJFS"), appeals from the judgment of the Franklin County Court of Common Pleas reversing ODJFS's decision and finding that the decision was not supported by reliable, probative, and substantial evidence.

{¶ 2} Appellee, Harvey Wolff, has been diagnosed with numerous medical conditions.[1] Appellee lives alone and receives Social Security disability benefits. On or about January 3, 2003, appellee applied to ODJFS for the Medicaid Home and Community Waiver Program ("OHC") to provide him with in-home assistance and support. ODJFS asked him to reapply, and he did so on May 16, 2003. Appellee's application was denied, and he requested a state hearing. A hearing was held on September 30, 2003. Thereafter, on October 8, 2003, the state hearing decision ordered ODJFS to reassess appellee. Carestar, which provides home-service assessments for ODJFS, recommended that appellee be denied in-home assistance. After review, ODJFS denied appellee's request, and notice of the denial was sent to appellee on December 16, 2003.[2] A hearing was held on the denial of services on September 1, 2004.

{¶ 3} On September 8, 2004, the state hearing decision found that appellee did not require the level of care necessary to qualify for the OHC. Appellee requested an administrative appeal of the decision denying his application for OHC services. A designee of the director of ODJFS reviewed the matter and affirmed the decision and findings contained in the decision. Appellee appealed this matter to the Franklin County Court of Common Pleas pursuant to R.C. 5101.35 and 119.12. The trial court reversed the order of ODJFS, finding that the order was not supported by reliable, probative, and substantial evidence.

---

1. Appellee's medical conditions include Asperger's syndrome, anxiety disorder, hypertension, hyperlipidemia, Schizoaffective disorder, depression, and nonverbal learning disorder. At the time he filed for services, appellee was 53 years old.

2. There is some confusion regarding whether or not notice was properly sent in September and December 2003; however, such is not relevant to this appeal.

The trial court further found that appellee did qualify for OHC services. It is from this decision that ODJFS appeals.

{¶ 4} On appeal, ODJFS raises the following assignments of error:

First Assignment of Error

The common pleas court erred in applying an incorrect legal standard to its review of ODJFS' administrative appeal decision.

Second Assignment of Error

The common pleas court improperly construed the administrative rules pertaining to the Ohio Medicaid home and community-based waiver program.

Third Assignment of Error

The trial court erred when it found this case was a refiled case.

Fourth Assignment of Error

The trial court erred by concluding that the due process issue was moot since the court improperly found the Appellee eligible for the OHC waiver. Since legal questions are reviewed de novo, this Court should decide the question of whether the Appellee's due process rights during the reassessment, denial of eligibility and second state hearing and administrative appeal were violated.

{¶ 5} Before we can reach the merits of ODJFS's arguments, we must address appellee's motion to dismiss, in which appellee contends that this court lacks jurisdiction to hear this appeal. Appellee argues that ODJFS may not appeal to this court, because the trial court's decision was based solely upon its evidentiary findings, and did not involve a question of law.

{¶ 6} R.C. 119.12 provides:

The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. The court shall award compensation for fees in accordance with section 2335.39 of the Revised Code to a prevailing party, other than an agency, in an appeal filed pursuant to this section.

The judgment of the court shall be final and conclusive unless reversed, vacated, or modified on appeal. Such appeals may be taken either by the party or the agency, shall proceed as in the case of appeals in civil actions, and shall be pursuant to the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code. *Such appeal by the agency shall be taken on questions of law relating to the constitutionality, construction, or interpretation of statutes and rules of the agency, and in such*

*appeal the court may also review and determine the correctness of the judgment of the court of common pleas that the order of the agency is not supported by any reliable, probative, and substantial evidence in the entire record.*

(Emphasis added.)

{¶ 7} In *Miller v. Dept. of Indus. Relations* (1985), 17 Ohio St.3d 226, 17 OBR 466, 479 N.E.2d 254, the Supreme Court of Ohio stated that the clear language of R.C. 119.12 allows an agency the right to appeal only questions of law that pertain to state statutes and agency rules or regulations. Only after the appeal is perfected on those grounds can the court of appeals have jurisdiction to review the trial court's decision on the particular question of law and whether that decision is supported by reliable, probative, and substantial evidence. Id.

{¶ 8} That an appeal raises a question of law is not sufficient; the question must relate to the constitutionality, construction, or interpretation of a statute or rule. *Enertech Elec., Inc. v. West Geauga Bd. of Edn.* (Sept. 3, 1996), Franklin App. No. 96APE03–370, 1996 WL 506825. See, also, *Ramey v. Ohio State Bd. of Chiropractic Examiners* (Aug. 3, 1995), Franklin App. No. 94APE10–1512, 1995 WL 458957.

{¶ 9} In *Mentor Marinas, Inc. v. Bd. of Liquor Control* (1964), 1 Ohio App.2d 219, 30 O.O.2d 252, 204 N.E.2d 404, this court noted that any judicial decision involves application of the law to the facts. However, the mere application of the law to the facts does not constitute "interpretation" within the meaning of R.C. 119.12. *Enertech,* supra, citing *Mentor.* There must be a genuine question presented and a specific finding by the trial court as to the meaning of the statute or rule. Id.

{¶ 10} In *Enertech,* this court was presented with the issue of whether the trial court ruled on a question of law relating to the interpretation or construction of R.C. 9.31. The trial court found that the West Geauga Board of Education had based its decision on factors outside of R.C. 9.31 and that the board's concerns were not the key issues in the statutory test and that R.C. 9.31 does not entrust such discretion to the board. By so holding, this court found that the trial court was interpreting R.C. 9.31, and therefore, the trial court's decision involved a question of law relating to the interpretation of R.C. 9.31.

{¶ 11} As in *Enertech,* the constitutionality of Ohio Adm.Code 5101:3–3–06 was not at issue in the trial court; therefore, the issue before us is whether the trial court ruled on a question of law relating to the interpretation or construction of Ohio Adm.Code 5101:3–3–06. It is ODJFS's position that the trial court misinterpreted Ohio Adm.Code 5101:3–3–06, the rule pertaining to the intermediate level of care, which is required for the OHC. Specifically, ODJFS contends that the

trial court confused the "protective level of care" with the "intermediate level of care" and thereby improperly interpreted the administrative rules at issue here. ODJFS further contends that the trial court applied an incorrect standard of review because the trial court applied a "preponderance of the evidence" standard rather than the proper standard of review, which is whether ODJFS's decision was based on reliable, probative, and substantial evidence.

{¶ 12} While the trial court did not specifically state that it was interpreting the administrative rules, the trial court was indeed engaged in interpreting the rules because the trial court determined what evidence satisfied the criteria of the rules and interpreted what the criteria were and how they were defined. ODJFS does not take issue with the evidence presented or with the factual findings of the trial court; rather, ODJFS contends that the court confused Ohio Adm.Code 5101:3–3–06 with 5101:3–3–08 when it found appellee eligible for OHC services.

{¶ 13} We hold that because the trial court's decision involved a question of law relating to the interpretation of Ohio Adm.Code 5101:3–3–06 and 5101:3–3–08, ODJFS could properly appeal to this court. Accordingly, we deny appellee's motion to dismiss.

{¶ 14} Having held that this court has jurisdiction to hear this appeal, we now turn to the merits of the ODJFS's appeal.

{¶ 15} In an administrative appeal pursuant to R.C. 119.12, the trial court reviews an order to determine whether it is supported by reliable, probative, and substantial evidence and is in accordance with the law. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 482 N.E.2d 1248. In applying this standard, the court must "give due deference to the administrative resolution of evidentiary conflicts." *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 407 N.E.2d 1265.

{¶ 16} Reliable, probative, and substantial evidence has been defined as follows:

(1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.

(Footnotes omitted.) *Our Place, Inc. v. Ohio Liquor Control Comm.* (1992), 63 Ohio St.3d 570, 571, 589 N.E.2d 1303.

{¶ 17} On appeal to this court, the standard of review is more limited. Unlike the court of common pleas, a court of appeals does not determine the

weight of the evidence. *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.* (1992), 63 Ohio St.3d 705, 707, 590 N.E.2d 1240. In reviewing the court of common pleas' determination that the commission's order was supported by reliable, probative, and substantial evidence, this court's role is limited to determining whether the court of common pleas abused its discretion. *Roy v. Ohio State Med. Bd.* (1992), 80 Ohio App.3d 675, 680, 610 N.E.2d 562. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. However, on the question of whether the commission's order was in accordance with the law, this court's review is plenary. *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 343, 587 N.E.2d 835.

{¶ 18} Because ODJFS's third assignment of error has implications regarding appellant's other assignments of error, we will address it first.

{¶ 19} In its third assignment of error, ODJFS argues that the trial court erred in designating this case as a refiled case. Appellee argues that if the case designation was made in error, it constitutes harmless error, and therefore, we should overrule ODJFS's third assignment of error. We disagree. While in some instances wrongfully designating a case as refiled may constitute harmless error, in this instance, the designation determines the content of the record that is before both us and the trial court, and thereby directly affects appellant's fourth assignment of error.

{¶ 20} Loc.R. 31 governs the assignment of cases in the General Division of the Franklin County Court of Common Pleas. Loc.R. 31.01 states:

> If a case is dismissed and subsequently refiled, the refiled complaint shall contain the following designation under the case number: "THIS IS A RE-FILED CASE." The Trial Judge to whom the case was previously assigned shall be reassigned to the refiled case.

(Emphasis sic.)

{¶ 21} While appellee designated this case as a refiled case, it clearly is not a refiled case, but rather is an administrative appeal of the second administrative decision regarding appellee's request for services. Appellee had appealed the first decision to the Franklin County Court of Common Pleas, the trial court entered judgment, and the appeal of that judgment was pending in this court at the time appellee filed the "refiled case." Thus, Loc.R. 31.01 clearly was not applicable, and the trial court indeed erred when it ruled that this matter should be designated as a refiled case.

{¶ 22} We agree with the trial court's assertion that there was no prejudice or risk of "judge shopping" in allowing the case to proceed under the previous case number or the previously assigned trial judge. The significance of our holding, however, is that the only issues and evidence properly before this court, and the trial court, are those regarding the second assessment of appellee, and the resulting hearings and appeals.

{¶ 23} Accordingly, we sustain appellant's third assignment of error.

{¶ 24} In its second assignment of error, ODJFS argues that the trial court improperly construed the administrative rules pertaining to the OHC. The trial court found that the administrative appeal decision of ODJFS was not supported by reliable, probative, and substantial evidence. Thus, the trial court concluded, in contrast to ODJFS, that appellee satisfied the criteria for an intermediate level of care, and therefore, qualifies for OHC services.

{¶ 25} Under the current Ohio home-care program, eligible consumers may receive services at home as an alternative to a nursing-home or hospital care. Ohio Adm.Code 5101:3–12–02. The ODJFS-administered OHC is a home- and community-based program serving individuals who meet the criteria set forth in Ohio Adm.Code 5101:3–12–04 and 5101:3–12–01(OO). Ohio Adm.Code 5101:3–12–01(HH). These programs are called the Ohio home-care waiver and the transitions waiver. Id.

{¶ 26} As is relevant to this appeal, a consumer can receive services if he or she is enrolled in one of the ODJFS-administered home-care benefits packages. Ohio Adm.Code 5101:3–12–04. According to Ohio Adm.Code 5101:3–12–04(C):

> To be eligible for services under an ODJFS-administered waiver benefit package, the following criteria must be met:
>
> (1) At the time of enrollment on the Ohio home care waiver:
>
> (a) The consumer regardless of age, must have a skilled level of care in accordance with rule 5101:3–3–05 of the Administrative Code, have a chronic, unstable medical condition that requires the skills of a registered nurse to detect and evaluate the consumer's need for possible treatment or for instituting nursing procedures, and in the absence of the ODJFS-administered HCBS waiver, would require long term hospitalization or NF placement; or
>
> (b) The consumer, if under the age of sixty, must have an intermediate level of care in accordance with rule 5101:3–3–06 of the Administrative Code, and in the absence of an ODJFS-administered HCBS waiver would require NF placement[.]

{¶ 27} According to Ohio Adm.Code 5101:3-3-06(C) [3]:

An individual may be determined to require an intermediate level of care (ILOC) only if both of the following conditions are met:

(1) The individual's physical and mental condition and resulting service needs have been evaluated and compared to all of the possible levels of care (in accordance with rule 5101:3-3-15 of the Administrative Code) and it has been determined that:

(a) The individual requires services beyond the minimum required for a protective level of care (set forth in rule 5101:3-3-08 of the Administrative Code); but,

(b) The individual's condition and/or corresponding service needs do not meet the minimum criteria for a skilled level of care set forth in rule 5101:3-3-05 of the Administrative Code; and,

(c) The individual's condition and/or service needs do not meet the criteria for an ICF-MR/DD LOC set forth in rule 5101:3-3-07 of the Administrative Code; and

(2) At least one of the following applies:

(a) The individual requires hands-on assistance with the completion of at least two activities of daily living;

(b) The individual requires hands-on assistance with the completion of at least one activity of daily living; and is unable to perform self-administration of medication and requires that medication administration be performed by another person;

(c) The individual requires one or more skilled nursing or skilled rehabilitation services (as defined in paragraphs (B)(4) and (B)(5) of rule 5101:3-3-05 of the Administrative Code) at less than a skilled care level (as defined in paragraph (B)(3) of rule 5101:3-3-05 of the Administrative Code); or

(d) Due to a cognitive impairment, including but not limited to dementia (as defined in rule 5101:3-3-151 of the Administrative Code), the individual requires the presence of another person, on a twenty-four-hour-a-day basis for the purpose of supervision to prevent harm.

{¶ 28} There is no evidence that appellee falls under Ohio Adm.Code 5101:3-3-06(2)(b), (2)(c), or (2)(d); therefore, appellee must satisfy the requirements of Ohio Adm.Code 5101:3-3-06(1) and 5101:3-3-06(2)(a) for a determination that he requires an intermediate level of care.

---

**3.** Appellee has not asserted that he requires skilled care; therefore, our opinion will focus on the portions of the code related to persons who need care at an intermediate level.

{¶ 29} To require the protective level of care discussed in Ohio Adm.Code 5101:3–3–06(1), Ohio Adm.Code 5101:3–3–08(C) provides:

An individual may be determined to require protective care, only if both of the following conditions are met:

(1) The individual's physical and mental condition and resulting service needs have been evaluated and compared to all of the possible levels of care, and it has been determined in accordance with rule 5101:3-3-15 of the Administrative Code that the individual's condition and/or corresponding service needs do not meet the criteria for skilled care, intermediate care, or for an ICF-MR level of care set forth in rules 5101:3-3-05 to 5101:3-3-07 of the Administrative Code; and

(2) The individual requires either:

(a) Both of the following:

(i) Supervision of one ADL or supervision of self-administration of medication; and

(ii) Assistance with three IADLs; or

(b) Due to a cognitive impairment, including but not limited to dementia (as defined in rule 5101:3-3-151 of the Administrative Code), the individual requires the presence of another person, on less than a twenty-four-hour-a-day basis for the purpose of supervision to prevent harm.

{¶ 30} Thus, taking these provisions together, in order for appellee to qualify for OHC services, he must first be found to require a protective level of care pursuant to Ohio Adm.Code 5101:3-3-08. If he requires a protective level of care, then the next step is to determine whether he requires services at the intermediate level of care pursuant to Ohio Adm.Code 5101:3-3-06.

{¶ 31} An activity of daily living ("ADL"), as used in both Ohio Adm.Code 5101:3-3-06 and 5101:3-3-08, is defined as a personal or self-care skill performed, with or without the use of assistive devices, on a regular basis that enables the individual to meet basic life needs for food, hygiene, and appearance. For purposes of this rule, the term "ADL" may refer to any of the following:

(a) "Mobility" is the ability to use fine and gross motor skills to reposition or move oneself from place to place, with or without the use of assistive devices. Mobility includes all of the following:

(i) "Bed mobility," the ability to move to and/or from a lying position, turn from side to side, or otherwise position the body while in bed;

(ii) "Transfer," the ability to move between surfaces (e.g. to/from bed, chair, wheelchair, standing position, etc.); and

(iii) "Locomotion," the ability to move between locations by ambulation or by other means.

(b) "Bathing" is the ability to cleanse one's body by showering, tub or sponge bath, or any other generally accepted method, and may be performed with or without the use of assistive devices.

(c) "Grooming" is the ability to perform the tasks associated with oral hygiene, hair care, and nail care.

(d) "Toileting" is the ability to appropriately eliminate and dispose of bodily waste, with or without the use of assistive devices or appliances. Toileting may include the use of a commode, bedpan, or urinal, the ability to change an absorbent pad, and to appropriately cleanse the perineum; and/or the ability to manage an ostomy or catheter;

(e) "Dressing" is the ability to put on, fasten, and take off all items of clothing, including the donning and/or removal of prostheses;

(f) "Eating" is the ability to feed oneself. Eating includes the processes of food preparation, getting food into one's mouth, chewing, and swallowing, and/or the ability to use and self-manage a feeding tube.

Ohio Adm.Code 5101:3-3-08(B)(1).

{¶ 32} An instrumental activity of daily living ("IADL"), as used in Ohio Adm.Code 5101:3-3-08, is defined as a community-living skill performed, with or without the use of assistive devices, on a regular basis that enables the individual to independently manage the individual's living arrangement. For the purposes of this rule, the term "IADL" may refer to any of the following:

(a) Shopping. "Shopping" is the ability to prepare a shopping list and purchase groceries, clothing, and household items;

(b) Meal preparation. "Meal preparation" is the ability to plan nutritional meals and cook any type of food;

(c) Environmental management. "Environmental management" is the ability to maintain the living arrangement in a manner that ensures the health and safety of the individual. Environmental management includes all of the following:

(i) House cleaning. "House cleaning" is the ability to make beds, clean the bathroom, sweep and mop floors, dust, clean and store dishes, pick up clutter, and take out trash;

(ii) Heavy chores. "Heavy chores" means the ability to move heavy furniture and appliances for cleaning, turn mattresses, and wash windows and walls; and

(iii) Yardwork and/or maintenance. "Yardwork and/or maintenance" is the ability to care for the lawn, rake leaves, shovel snow, complete minor home repairs, and paint.

(d) Personal laundry. "Personal laundry" is the ability to wash and dry clothing and household items by machine or by hand.

(e) Accessing community services. "Accessing community services" is the ability to interface with the community. Accessing community services includes all of the following:

(i) Telephoning. "Telephoning" is the ability to make and answer telephone calls;

(ii) Accessing transportation. "Accessing transportation" is the ability to acquire and use transportation; and

(iii) Managing legal and/or financial affairs. "Managing legal and/or financial affairs" is the ability to pay bills, write checks, balance a check book, access insurance and public benefits, and interact with the legal system.

Ohio Adm.Code 5101:3-3-08(B)(4).

{¶ 33} The trial court found that appellee needs assistance in grooming, traveling to a grocery store, cleaning his house, and in attending medical appointments. With respect to grooming, the evidence demonstrates that appellee needs assistance in cutting his nails and nose hairs. ODJFS adamantly refutes that these are types of activities contemplated by Ohio Adm.Code 5101:3-3-06. However, we find that even if cutting nails and nose hairs are the type of activity contemplated by Ohio Adm.Code 5101:3-3-06, this provides evidence of requiring hands-on assistance with only one ADL instead of two. Pursuant to Ohio Adm.Code 5101:3-3-06, hands-on assistance with two ADLs is required to qualify for the OHC waiver.

{¶ 34} There is no evidence that appellee requires hands-on assistance with mobility, bathing, toileting, dressing, or eating. In fact, appellee does not even argue, or direct us to any evidence in the record to demonstrate, that he needs hands-on assistance with a second ADL.

{¶ 35} The intake specialist for Carestar completed a checklist about appellee. The intake specialist's supervisor testified about the responses on the checklist at the September 1, 2004 hearing. The intake specialist noted that appellee is independent with mobility, toileting, and eating. While she noted that appellee needs supervision with bathing, grooming, and dressing, there is no indication that he needs hands-on assistance with these activities. The intake specialist also noted that appellee needs assistance with IADLs such as meal preparation, house cleaning, accessing the community, and transportation. In conclusion, the intake specialist stated that appellee does not need an intermediate level of care, and therefore, she recommended that the OHC services be denied.

{¶ 36} Maxine Skuba, appellee's weekly caregiver, testified that although she is concerned about appellee's vegetable intake, he is capable of doing his own

grocery shopping. Skuba further testified that while appellee is "not very capable of cooking for himself," he is "proficient at using the microwave" and "will follow the instructions * * * on the frozen item."

{¶ 37} There is no evidence to indicate a need for hands-on assistance with a second ADL, even assuming that needing assistance with cutting nails and nose hairs constitutes an ADL pursuant to Ohio Adm.Code 5101:3-3-06.

{¶ 38} The activities discussed by the trial court, while they do constitute IADLs as defined by the statute, and do satisfy the criteria for the protective level of care, do not constitute ADLs, which are required for the intermediate level of care. Thus, it appears that the trial court used the criteria for determining the protective level of care, IADLs, to determine whether or not appellee qualified for the intermediate level of care. Such interpretation mandates a finding that not only did the trial court abuse its discretion, but its decision is not in accordance with the law. Accordingly, we sustain appellant's second assignment of error.

{¶ 39} In its fourth assignment of error, appellant argues that since the trial court erred by finding that appellee was eligible for the OHC services, the trial court likewise erred when it concluded that appellee's due-process claims were moot. Even though the trial court did not rule on the due-process issues, but rather found them to be moot, appellant urges this court to decide whether there was a due-process violation. We decline, however, to rule on this issue, and instead remand the matter to the trial court for adjudication in accordance with our disposition of appellant's second and third assignments of error.

{¶ 40} Because we have sustained appellant's second assignment of error, appellant's first assignment of error is rendered moot.

{¶ 41} For the foregoing reasons, we sustain appellant's second and third assignments of error, and overrule appellant's first and fourth assignments of error as moot. Accordingly, the judgment of the Franklin County Court of Common Pleas is hereby reversed, and the matter is remanded to that court for further proceedings consistent with law and this decision.

Motion to dismiss denied;
judgment reversed
and cause remanded.

KLATT, P.J., and FRENCH, J., concur.