HCMC, INC., d.b.a. We Care Medical, Appellee and Cross–Appellant,

v.

OHIO DEPARTMENT OF JOB AND FAMILY
SERVICES, Appellant and Cross–Appellee.

[Cite as *HCMC, Inc. v. Ohio Dept. of Job & Family
Servs.*, 179 Ohio App.3d 707, 2008-Ohio-6223.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–144.

Decided Dec. 2, 2008.

710

Geoffrey E. Webster, Eric B. Hershberger, and J. Randall Richards, for appellee/cross-appellant.

Nancy H. Rogers, Attorney General, and Henry G. Appel, Assistant Attorney General, for appellant/cross-appellee.

Kegler, Brown, Hill & Ritter, Ralph E. Breitfeller, R. Kevin Kerns, and Jennifer L. Mackanos, for amicus curiae, Omnicare Respiratory Services.

PETREE, Judge.

{¶ 1} Appellant and cross-appellee, Ohio Department of Job and Family Services ("ODJFS," or "agency"), appeals from a judgment of the Franklin County Court of Common Pleas that reversed an order of ODJFS and remanded the matter to the agency. Appellee and cross-appellant, HCMC, Inc., d.b.a. We Care Medical ("HCMC"), cross-appeals. For reasons that follow, we affirm in part and reverse in part the judgment of the common pleas court and remand the matter to the common pleas court.

{¶ 2} HCMC is a company that provides oxygen respiratory services. Between November 2004 and November 2005, the Ohio Auditor of State audited Medicaid reimbursements that were made to HCMC for the period of October 1, 2001, through June 30, 2004. During the period under audit, HCMC received reimbursements totaling $1,436,907.52 for 7,993 claims. According to the state auditor's report, the scope of the audit was limited to claims, not involving Medicare copayments, for which HCMC rendered services to Medicaid patients, and all of HCMC's reimbursements were for the supply of oxygen concentrator services to Medicaid residents in long-term care facilities.

{¶ 3} After reviewing HCMC's Medicaid services, the state auditor determined that HCMC had received $1,010,404.26 in overpayments and separated the results into "exception testing" and "usual and customary" categories.[1] ODJFS thereafter issued a proposed adjudication order with a demand that HCMC repay $1,010,404.26, plus interest.

---

1. The audit's exception analyses identified $33,803.70 in overpayments and $446.40 in overpayments based on combined census reviews. The audit also identified $976,154.16 for reimbursed services in excess of HCMC's usual and customary fee.

{¶ 4} Challenging factual and legal conclusions of the audit, HCMC requested an administrative hearing pursuant to R.C. Chapters 119 and 5111. After conducting an administrative hearing, a hearing examiner issued a report and recommendation, wherein the hearing examiner concluded that HCMC owed the full amount identified in the audit. Objecting to this report and recommendation, HCMC sought relief from ODJFS. Adopting the hearing examiner's findings of fact, conclusions of law, and recommendation, the director of ODJFS rejected HCMC's objections and issued an adjudication order directing HCMC to repay $1,010,404.26, plus interest.

{¶ 5} From this order, ODJFS appealed to the Franklin County Court of Common Pleas. On condition that HCMC post a supersedeas bond in the amount of $200,000, the common pleas court stayed enforcement of the adjudication order. Later, the common pleas court reversed the agency's adjudication order and remanded the matter to ODJFS to calculate a "usual and customary" charge based on the common pleas court's findings and conclusions. From the common pleas court judgment, ODJFS appeals and HCMC cross-appeals.

{¶ 6} Upon ODJFS's unopposed motion, this court permitted ODJFS to collect $34,250.10, plus applicable interest from HCMC, thereby excepting an amount from the common pleas court's stay order that represented the "exception testing" portion of the state's audit.

{¶ 7} In its appeal, ODJFS advances four assignments of error, as follows:

**First Assignment of Error**

The trial court erred by ordering further factual development of appellant's cost calculations when the appellant "chose not to supply more detailed information on its cost calculations" during the audit or the administrative hearing.

**Second Assignment of Error**

The lower court erred when it concluded that oxygen services provided to Medicaid and non-Medicaid patients are different because the oxygen supply company bills the nursing home and terms the service a rental.

**Third Assignment of Error**

The lower court erred when it ordered ODJFS to pay a surcharge to compensate a Medicaid provider for its "overhead."

**Fourth Assignment of Error**

The trial court erred by staying enforcement of an entire adjudication order where the Medicaid provider stipulated that it was required to repay a specific amount.

{¶ 8} On cross-appeal, HCMC advances the following two assignments of error:

*Cross–Appeal Assignment Of Error No. I:*

The trial court erred by remanding this matter to the department.

*Cross–Appeal Assignment Of Error No. II:*

The trial court abused its discretion when it failed to reverse the department's decision to exclude relevant evidence offered by HCMC at hearing.

{¶ 9} For ease of review, we shall address ODJFS's and HCMC's claims of error in a different order from the sequence offered by the parties. We shall begin, however, by sua sponte considering whether this court has subject-matter jurisdiction to consider ODJFS's appeal.

{¶ 10} An appellate court may sua sponte consider whether subject-matter jurisdiction properly lies. *State ex rel. White v. Cuyahoga Metro. Hous. Auth.* (1997), 79 Ohio St.3d 543, 544, 684 N.E.2d 72; *Buzard v. Triplett,* Franklin App. No. 05AP–579, 2006-Ohio-1478, 2006 WL 772024, at ¶ 7; *Mogavero v. Lombardo* (Sept. 25, 2001), Franklin App. No. 01AP–98, 2001 WL 1117542. Subject-matter jurisdiction is a condition precedent to a court's ability to consider a case. Absent subject-matter jurisdiction, a court's proclamation is void. See *State ex rel. Ohio Democratic Party v. Blackwell,* 111 Ohio St.3d 246, 2006-Ohio-5202, 855 N.E.2d 1188, at ¶ 8, quoting *Pratts v. Hurley,* 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, at ¶ 11, quoting *State ex rel. Tubbs Jones v. Suster* (1998), 84 Ohio St.3d 70, 75, 701 N.E.2d 1002, reconsideration denied (1999), 84 Ohio St.3d 1475, 704 N.E.2d 582 (" '[subject-matter jurisdiction] is a "condition precedent to the court's ability to hear the case. If a court acts without jurisdiction, then any proclamation by that court is void." ' ").

{¶ 11} Fundamental to ODJFS's appeal is a contention that the common pleas court incorrectly interpreted ODJFS's administrative rules. R.C. 119.12 provides:

An appeal by the agency shall be taken on questions of law relating to the constitutionality, construction, or interpretation of statutes and rules of the agency, and, in the appeal, the court may also review and determine the correctness of the judgment of the court of common pleas that the order of the agency is not supported by any reliable, probative, and substantial evidence in the entire record.

{¶ 12} In its decision, the common pleas court stated:

It is * * * concluded that the audit did not compare rates for the same service. While the audit may constitute prima facie evidence, nothing prohibits review of the underlying premises upon which the audit is based. The Court has considered the applicable rules in pari materia and finds Appellant's interpretation legally correct. Phraseology of "usual and customary fee charged to patients for the same service" does not comport with construing rental of

machines to a facility to be the same as supplying services to individual Medicaid patients.

{¶ 13} Because the common pleas court "considered the applicable rules in pari materia," its judgment involved the construction and interpretation of ODJFS's administrative rules, rather than a simple application of law to facts. Accordingly, we hold that ODJFS properly may appeal to this court. See R.C. 119.12; *Wolff v. Ohio Dept. of Job & Family Serv.*, 165 Ohio App.3d 118, 2006-Ohio-214, 844 N.E.2d 1238, at ¶ 13 ("because the trial court's decision involved a question of law relating to the interpretation of Ohio Adm.Code 5101:3–3–06 and 5101:3–3–08, ODJFS could properly appeal to this court"); see also *Enertech Elec., Inc. v. W. Geauga Bd. of Edn.* (Sept. 3, 1996), Franklin App. No. 96APE03–370, 1996 WL 506825, citing *Ramey v. Ohio State Bd. of Chiropractic Examiners* (Aug. 3, 1995), Franklin App. No. 94APE10–1512, 1995 WL 458957. Cf. *Ramey*, ("[a] simple application of the law to facts does not amount to an interpretation within the meaning of R.C. 119.12"). (Citations omitted.)

■ {¶ 14} Pursuant to R.C. 119.12, when a common pleas court reviews an order of an administrative agency, it must consider the entire record to determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 110–111, 17 O.O.3d 65, 407 N.E.2d 1265; see also *Andrews v. Bd. of Liquor Control* (1955), 164 Ohio St. 275, 280, 58 O.O. 51, 131 N.E.2d 390; *Our Place, Inc. v. Ohio Liquor Control Comm.* (1992), 63 Ohio St.3d 570, 571, 589 N.E.2d 1303 (defining reliable, probative, and substantial evidence).

■■ {¶ 15} The common pleas court's "review of the administrative record is neither a trial *de novo* nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " *Lies v. Ohio Veterinary Med. Bd.* (1981), 2 Ohio App.3d 204, 207, 2 OBR 223, 441 N.E.2d 584, quoting *Andrews*, 164 Ohio St. at 280, 58 O.O. 51, 131 N.E.2d 390. In its review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive. *Conrad*, 63 Ohio St.2d at 111, 17 O.O.3d 65, 407 N.E.2d 1265.

■ {¶ 16} An appellate court's review of an administrative decision is more limited than that of a common pleas court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 614 N.E.2d 748. In *Pons*, the Supreme Court of Ohio explained:

While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of

judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or a trial court. Instead, the appellate court must affirm the trial court's judgment.

Id. at 621, 614 N.E.2d 748.

{¶ 17} An appellate court does, however, have plenary review of questions of law. *Chirila v. Ohio State Chiropractic Bd.* (2001), 145 Ohio App.3d 589, 592, 763 N.E.2d 1192, citing *Steinfels v. Ohio Dept. of Commerce, Div. of Sec.* (1998), 129 Ohio App.3d 800, 803, 719 N.E.2d 76.

{¶ 18} Bearing in mind these principles, we shall address ODJFS's assignments of error and HCMC's assignments of error on cross-appeal.

{¶ 19} By its fourth assignment of error, ODJFS asserts that the common pleas court erred by staying enforcement of the agency's entire adjudication order where HCMC stipulated that it was required to pay $34,250.10, plus interest.

{¶ 20} Upon ODJFS's motion, this court already has excepted $34,250.10, plus applicable interest, from the common pleas court's stay, thereby permitting ODJFS to collect this amount from HCMC. Because, as to ODJFS's fourth assignment of error, this court already has granted ODJFS the relief it seeks, ODJFS's fourth assignment of error lacks any practical significance, thereby rendering it moot.

{¶ 21} By its second assignment of error, claiming the common pleas court incorrectly interpreted ODJFS's administrative rules, ODJFS asserts that the common pleas court erred when it concluded that oxygen services provided to Medicaid and non-Medicaid patients are different because HCMC bills the nursing home and terms the service a rental.

{¶ 22} Generally, "administrative rules do not dictate public policy, but rather expound upon public policy already established by the General Assembly in the Revised Code. ' "The purpose of administrative rulemaking is to facilitate an administrative agency's placing into effect a policy declared by the General Assembly in the statutes to be administered by the agency." ' * * * Yet determination of public policy remains with the General Assembly. * * * Administrative agencies may make only 'subordinate' rules." *Chambers v. St. Mary's School* (1998), 82 Ohio St.3d 563, 567, 697 N.E.2d 198.

{¶ 23} "Unlike the legislative process, rulemaking by administrative agencies does not involve the collaborative effort of elected officials. Directors of administrative agencies are appointed by the Governor. * * * It is these directors

and/or their employees who propose and adopt administrative rules. Administrative agencies have the technical expertise to compose such rules."

{¶ 24} Thus, appellate courts generally "must give due deference to an administrative agency's interpretation of its own administrative rules." *Salem v. Koncelik*, 164 Ohio App.3d 597, 2005-Ohio-5537, 843 N.E.2d 799, at ¶ 16, citing *Hamilton Cty. Bd. of Mental Retardation & Dev. Disabilities v. Professionals Guild of Ohio* (1989), 46 Ohio St.3d 147, 545 N.E.2d 1260.

{¶ 25} Due deference to an administrative agency's interpretation of its own administrative rules, however, is not unfettered. If an agency's interpretation is unreasonable and fails to apply the plain language of a statute or rule, then an appellate court need not defer to such an unreasonable interpretation. See *Guethlein v. Ohio State Liquor Control Comm.*, Franklin App. No. 05AP–888, 2006-Ohio-1525, 2006 WL 827434, at ¶ 24.

{¶ 26} Claiming that the state auditor compared rates for the same service, ODJFS asserts that (1) HCMC provided the same medical service, namely, oxygen concentrator services, to Medicaid recipients and non-Medicaid recipients in long-term care facilities ("LTCFs") and (2) despite providing the same medical service, HCMC received Medicaid reimbursement at a higher rate than the "usual and customary" fee it charged non-Medicaid recipients for the same medical service in violation of former versions of Ohio Adm.Code 5101:3–1–17.2(A), which were in effect at all times pertinent to the proceedings.[2] Cf. former Ohio Adm.Code 5101:3–10–13(H)(4).[3]

{¶ 27} HCMC disputes ODJFS's characterization that it provided the same medical service to Medicaid recipients and non-Medicaid recipients. Distinguishing between delivery of a "service" and delivery of a "good," HCMC contends it delivered a "service" to Medicaid recipients in LTCFs; whereas, it delivered a "good," namely, an oxygen concentrator, to LTCFs with whom HCMC had contractual obligations.

---

**2.** See 2003–2004 Ohio Monthly Record 1383; 2001–2002 Ohio Monthly Record 2830.

**3.** {¶ a} Former Ohio Adm.Code 5101:3–10–13(H)(4), which was effective October 11, 2001, through October 31, 2007, provided that "[p]ayment [for oxygen services for recipients in a long-term care facility] will be limited to the lower of the usual and customary charge of the supplier, or the medicaid maximum as set forth in appendix DD of rule 5101:3–1–60 of the Administrative Code."

{¶ b} Former Ohio Adm.Code 5101:3–10–13(A)(7), which was effective August 1, 1998, through October 10, 2001, provided that "[p]ayment for claims for oxygen services with service dates on or after July 1, 1994, will be limited to the lower of the usual and customary charge of the supplier, or the Medicaid maximum as set forth in appendix DD of rule 5101:3–1–60 of the Administrative Code."

{¶ 28} Delivery of an oxygen concentrator for rental purposes is distinguishable from useful labor related to the operation or maintenance of an oxygen concentrator. Our review of the evidence shows, however, that in this case, the service that HCMC provided to Medicaid recipients in LTCFs, and the service that HCMC provided to LTCFs with whom HCMC had contractual obligations involved both the delivery of oxygen concentrators and useful labor related to the operation and maintenance of the oxygen concentrator. Thus, to the extent that the common pleas court's decision is construed to conclude that oxygen services provided to Medicaid and non-Medicaid patients are different because HCMC bills the nursing home and terms the service a rental, we agree with ODJFS.

{¶ 29} We disagree, however, with ODJFS's claim that despite providing the same medical service, HCMC received Medicaid reimbursement at a higher rate than the "usual and customary" fee it charged non-Medicaid recipients for the same medical service in violation of former versions of Ohio Adm.Code 5101:3-1-17.2(A), which were in effect at all times pertinent to the proceedings.

{¶ 30} Rather, we find that the common pleas court properly concluded that "the [state auditor's] audit did not compare rates for the same service" and "[t]here is no evidence provided by the Department that comprises an analysis of or a comparison of the difference between billing by volume versus billing by device."

{¶ 31} Here, through its adjudication order, ODJFS adopted the state auditor's audit, wherein the state auditor compared HCMC's Medicaid billing records for oxygen concentrator services to patients in LTCFs with contracts that HCMC entered into with LTCFs for rental of oxygen concentrators.

{¶ 32} Former Ohio Adm.Code 5101:3-10-13, which was effective October 11, 2001, through October 31, 2007, provided:

(H) Payment for oxygen claims-long-term care facility (LTCF).

Payment for oxygen services for recipients in an LTCF is as follows:

(1) All claims must show billed charges for one month's service. Billed charges shall be the provider's usual and customary charge for the oxygen actually used by the recipient. The amount of oxygen actually used each month (as determined from a meter reading or refill amount and delivery information) must be determined and documented by the provider prior to submitting the monthly claim for reimbursement. Documentation of the amount of oxygen used each month must be maintained in the provider's file.

(2) Provider maintenance of documentation of the amount of oxygen used does not meet the requirements of this rule when such documentation is created, or collected from sources other than the provider, after the service has been billed.

(3) Regardless of delivery modality, i.e., gaseous system, liquid system, or concentrator, amounts less than seven hundred fifty cubic feet, or the equivalent, must be billed using the special codes established for that purpose and listed in appendix A of rule 5101:3–10–03 of the Administrative Code.

(4) Payment will be limited to the lower of the usual and customary charge of the supplier, or the medicaid maximum as set forth in appendix DD of rule 5101:3–1–60 of the Administrative Code.

(5) All equipment and supplies associated with oxygen administration to residents of an LTCF must be reimbursed through the facility's cost report as set forth in rule 5101:3–3–11 of the Administrative Code. Therefore, the cost of reservoirs, stands/carts, regulators, humidifiers, cannulas, masks, and tubing must be billed to the facility.

(6) A separate set of procedure codes has been established for oxygen services provided to a resident of an LTCF. Oxygen services provided to a resident of an LTCF must be billed to the department using these codes which are listed in the "Medicaid Supply List" (see appendix A of rule 5101:3–10–03 of the Administrative Code.)

Cf. Former Ohio Adm.Code 5101:3–10–13(C), effective August 1, 1998, through October 10, 2001 (oxygen services provided to residents of long-term care facilities).

{¶ 33} Under former Ohio Adm.Code 5101:3–10–13(H)(1), HCMC's billed charges for oxygen services provided to Medicaid recipients in an LTCF were required to be HCMC's "usual and customary charge for the oxygen actually used by the recipient." Cf. former Ohio Adm.Code 5101:3–110–13(C)(5) ("[b]illed charges shall be the provider's usual and customary charge for the oxygen actually used each month").[4] Stated differently, under both former Ohio Adm. Code 5101:3–10–13(H)(1) and former Ohio Adm.Code 5101:3–10–13(C)(5), HCMC's reimbursement claims for oxygen services provided to Medicaid recipients in an LTCF were linked to a Medicaid recipient's consumption of oxygen, or the volume of oxygen used by a Medicaid recipient.

{¶ 34} By contrast, however, reimbursement rates through HCMC's contracts with LTCFs for oxygen concentrators were not linked to the volume of oxygen consumed by patients. Rather, under HCMC's contracts with LTCFs that specifically referenced oxygen concentrator services, reimbursement rates for oxygen concentrators were based on daily or monthly fixed rates.

---

**4.** Former Ohio Adm.Code 5101:3–110–13(C)(5), which was in effect between August 1, 1998, and October 10, 2001, provided: "All claims must show billed charges for one month's service. Billed charges shall be the provider's usual and customary charge for the oxygen actually used each month (as determined from a meter reading) must be determined and documented by the provider prior to submitting the monthly claim for reimbursement."

{¶ 35} Because HCMC's claims for oxygen services provided to Medicaid recipients in an LTCF were linked to a recipient's consumption of oxygen, and because HCMC's contracts with LTCFs were not linked to a patient's consumption of oxygen, reimbursement methodologies between HCMC's billed Medicaid charges and HCMC's billed charges to individual LTCFs were not interchangeable and lacked equivalency.

{¶ 36} Because the essential character of these reimbursement methodologies qualitatively differed, by contrasting these qualitatively different reimbursement methodologies, the state auditor compared factors that were not identical in effect or significance. And because in her analysis the state auditor does not appear to have adjusted for these qualitative differences between the factors, the resulting analysis, which ODJFS adopted when it determined that HCMC owed $976,154.16 for reimbursed services in excess of HCMC's usual and customary fee, is lacking. Cf. Ohio Adm.Code 5101:3–10–13.1(E)(10), effective November 1, 2007 (requiring oxygen providers to bill usual and customary charges for rendered services when compared to similar services provided in the same setting to consumers with payor sources other than Medicaid).

{¶ 37} Additionally, ODJFS's conclusion that HCMC violated former Ohio Adm.Code 5101:3–1–17.2(A)(1) is founded on comparisons lacking equivalency. Pursuant to former versions of Ohio Adm.Code 5101:3–1–17.2(A), which were in effect at all times pertinent to the proceedings, HCMC, as a Medicaid provider, agreed to (1) render services as medically necessary without regard to factors such as race, creed, color, age, sex, national origin, handicap, or source of payment; (2) submit claims only for services actually performed; and (3) bill ODJFS "for no more than the usual and customary fee charged other *patients* for the same service." (Emphasis added.) Cf. former Ohio Adm.Code 5101:3–10–13(H)(1), effective October 11, 2001, through October 31, 2007 (requiring billed charges to be the "provider's usual and customary charge for the oxygen actually used by the *recipient* "). (Emphasis added.)

{¶ 38} But here, when the hearing examiner concluded that HCMC received reimbursements at a greater amount than its usual and customary fee for the same medical service, the hearing examiner adopted the state auditor's analysis contrasting billed charges for oxygen claims involving Medicaid *patients* in an LTCF with charges to long-term care *facilities* that had contracted with HCMC for rentals of oxygen concentrators. Thus, rather than contrasting charges between Medicaid patients and non-Medicaid patients, the state auditor and the hearing examiner instead contrasted groupings from conceptually dissimilar categories, namely, patients and facilities, to reach a conclusion that HCMC was reimbursed by Medicaid for an amount that exceeded its usual and customary fee charged other *patients* for the same service.

{¶ 39} In sum, to the extent that the common pleas court's decision is construed to conclude that oxygen services provided to Medicaid and non-Medicaid patients are different because HCMC bills the nursing home and terms the service a rental, we agree with ODJFS. We disagree, however, with ODJFS's contention that HCMC received Medicaid reimbursement at a higher rate than the "usual and customary" fee it charged non-Medicaid recipients for the same medical service in violation of former versions of Ohio Adm.Code 5101:3–1–17.2(A), which were in effect at all times pertinent to the proceedings. And we further find that the common pleas court did not abuse its discretion by concluding that "the [state auditor's] audit did not compare rates for the same service" and that "[t]here is no evidence provided by the Department that comprises an analysis of or a comparison of the difference between billing by volume versus billing by device."

{¶ 40} Accordingly, we sustain in part ODJFS's second assignment of error.

{¶ 41} By its third assignment of error, claiming that no statute or administrative rule exists to entitle a Medicaid provider to be reimbursed for overhead expenses, ODJFS asserts that the common pleas court erred when it ordered ODJFS to pay a surcharge to compensate HCMC for its "overhead."

{¶ 42} In response, HCMC does not call our attention to any statute or administrative rule to support a conclusion that it was entitled to an overhead surcharge. Rather, HCMC claims, among other things, that (1) the Ohio Administrative Code permitted HCMC to be reimbursed for its "usual and customary" charges for the same service; (2) the Ohio Administrative Code does not define "usual and customary"; and (3) except for its charges to Medicaid, HCMC has no "usual and customary" charge for oxygen actually consumed by a patient.

{¶ 43} Generally, under Medicaid law, states have freedom to develop their own standards and methods for reimbursement of Medicaid services. In Congressional Research ("CRS") Report for Congress (Received through the CRS Web), Medicaid Reimbursement Policy (Oct. 25, 2004), Order Code RL 32644, Summary, Mark Merlis, the report's author, states:

Under Medicaid law, states have considerable freedom to develop their own methods and standards for reimbursement of Medicaid services. Congress has periodically intervened to modify the broad guidelines within which states operate, and the Centers for Medicare and Medicaid Services [CMS] has used its regulatory authority to restrict certain state practices. Actual payment methodologies, however, are still left largely to the discretion of the states.

{¶ 44} In "Medicaid: A Primer," a Congressional Research Service Report for Congress, which was updated January 17, 2008, Order Code RL 33202, Elicia J. Herz, Specialist in Social Legislation, Domestic Social Policy Division, comments:

> For the most part, states establish their own payment rates for Medicaid providers. Federal regulations require that these rates be sufficient to enlist enough providers so that covered benefits will be available to Medicaid beneficiaries at least to the same extent they are available to the general population in the same geographic area.
>
> * * *
>
> Medicaid regulations place restrictions on how Medicaid cost-sharing may be used in determining provider reimbursement. States are prohibited from increasing the payments they make to providers to offset uncollected amounts for deductibles, co-insurance, co-payments or similar charges that the provider has waived or are uncollectible (with the exception of providers reimbursed by the state under Medicare reasonable cost reimbursement principles). In addition, if a state contracts with certain managed care organizations that do not impose the state's Medicaid cost-sharing requirements on their Medicaid members, the state must calculate payments to such organizations as if those cost-sharing amounts were collected.

(Footnotes omitted.) Id. at CRS–10 to CRS–11.

{¶ 45} Here, in its judgment, the common pleas court stated:

> The Court finds no provision offered by the Department to justify the conclusion that Appellant, by agreeing to provide services to Medicaid patients, has waived the right to recover overhead or administrative costs.
>
> * * *
>
> The Court is not determining that the full additional amounts claimed are appropriate in establishing the proper reimbursement rate. The evidence does support that the original $15.00 is at least reasonable as a bottom limit. * * *
>
> * * *
>
> It is incumbent upon the Department to calculate the proper usual and customary charge based upon the findings and conclusions in this decision. Accordingly, the matter is therefore **REVERSED AND REMANDED**.

{¶ 46} Absent any statute or administrative rule permitting a Medicaid provider to be reimbursed for a surcharge for overhead expenses, and to the extent that the common pleas court determined that HCMC was entitled to a surcharge for overhead expenses of at least $15, we find that the common pleas court abused its discretion by ordering ODJFS to recalculate "the proper usual and customary charge based upon the findings and conclusions in [its] decision."

{¶ 47} Accordingly, we sustain ODJFS's third assignment of error.

{¶ 48} By its first assignment of error, ODJFS asserts that the common pleas court prejudicially erred by ordering further factual development of appellant's cost calculations when the appellant "chose not to supply more detailed information on its cost calculations" during the audit or the administrative hearing. Specifically, ODJFS asserts that (1) HCMC waived a right to present evidence concerning its costs; (2) HCMC breached a duty to cooperate with the state auditor during the audit; and (3) HCMC failed to sustain its burden of production at the administrative hearing after ODJFS established a prima facie case by submitting the auditor's report into evidence at the administrative hearing, See *St. Francis Home, Inc. v. Ohio Dept. of Job & Family Serv.*, Franklin App. No. 06AP–287, 2006-Ohio-6147, 2006 WL 3365504, at ¶ 30 (finding that under former Ohio Adm.Code 5101:6–50–09(A)(4) any audit report, report of examination, exit conference report, or report of final settlement issued by ODJFS and entered into evidence is to be considered prima facie evidence of what it asserts).

{¶ 49} Our review of the evidence shows that during the audit, HCMC failed to fully provide evidence to the state auditor to support its claims of overhead expenses. And at the administrative hearing, although HCMC offered testimonial evidence that it incurred overhead expenses in providing oxygen services to Medicaid patients in an LTCF, HCMC provided no documentary evidence to support its claims of overhead costs.

{¶ 50} Waiver may be defined as "the 'intentional relinquishment or abandonment of a known right,'" *United States v. Olano* (1993), 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508, quoting *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461; see also *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, at ¶ 23, "[w]hereas forfeiture is the failure to make the timely assertion of a right." *Olano*, at 733, 113 S.Ct. 1770, 123 L.Ed.2d 508; see also *Payne*.

{¶ 51} Here, even assuming for the sake of argument that HCMC breached a duty to cooperate with the state auditor during the audit by failing to produce all requested documents, we cannot conclude that such a lack of cooperation resulted in HCMC's forfeiture of its right to present evidence concerning its costs at the administrative hearing, a proceeding that afforded the parties with a forum to offer evidence for argument or trial. See, e.g., *In re Rocky Point Plaza Corp.* (1993), 86 Ohio App.3d 486, 491–492, 621 N.E.2d 566 ("[a]djudication hearings * * * involve the determination of rights of specific persons and whether such rights should be granted based upon evidence * * * presented at the hearing"); Black's Law Dictionary (8th Ed.2004) 48 (defining "administrative hearing" as "[a]n administrative-agency proceeding in which evidence is offered for argument or trial").

{¶ 52} Accordingly, finding no error by the common pleas court in this respect, we overrule ODJFS's first assignment of error.

{¶ 53} We shall now turn our attention to HCMC's cross-assignments of error.

{¶ 54} By its second assignment of error, HCMC asserts that the common pleas court abused its discretion by failing to reverse the hearing examiner's decision to exclude evidence offered by HCMC at the administrative hearing.

{¶ 55} Former Ohio Adm.Code 5101:6–50–09(A)(3), which was in effect at the time of the administrative hearing, provided:

> The hearing examiner assigned to conduct a hearing has the power to rule on the admissibility of evidence or testimony, but a participant may make objections to the rulings thereon. If the hearing examiner refuses to admit evidence or testimony, the participant seeking admission of same must make a proffer thereof and such proffer will be made a part of the record of the hearing. The hearing examiner may refer to the guidelines contained in the "Ohio Rules of Evidence" in making decisions on admissibility.

See also former Ohio Adm.Code 5101:6–50–05(E)(3), also in effect at the time of the administrative hearing (providing that a hearing examiner, who has been appointed by the director of ODJFS, has "[t]he authority to pass upon the admissibility of evidence, rule on objections, procedural motions, and other procedural matters"). Cf. R.C. 119.09, providing:

> The agency shall pass upon the admissibility of evidence, but a party may at the time make objection to the rulings of the agency thereon, and if the agency refuses to admit evidence, the party offering the same shall make a proffer thereof, and such proffer shall be made a part of the record of such hearing.

{¶ 56} Under former Ohio Adm.Code 5101:6–50–05(E)(3) and 5101:6–50–09(A)(3), the hearing examiner therefore had authority to admit or exclude evidence at the administrative hearing. See also *In re Waste Technologies Industries* (1998), 132 Ohio App.3d 145, 152, 724 N.E.2d 819 (finding a hearing examiner had discretion to determine the admissibility of evidence); *Reed v. State Med. Bd. of Ohio*, 162 Ohio App.3d 429, 2005-Ohio-4071, 833 N.E.2d 814, at ¶ 19, citing *Haley v. Ohio State Dental Bd.* (1982), 7 Ohio App.3d 1, 7 OBR 1, 453 N.E.2d 1262 ("[t]he traditional rules of evidence are relaxed in administrative hearings").

{¶ 57} Because the hearing examiner had authority to admit or exclude evidence at the administrative hearing, our review is therefore limited to determining whether in this case, the common pleas court abused its discretion by failing to reverse the hearing examiner's decision to exclude evidence offered by HCMC at the administrative hearing. Cf. *In re Waste Technologies Industries,*

132 Ohio App.3d at 152, 724 N.E.2d 819; *State ex rel. Crescent Metal Prod., Inc. v. Indus. Comm.* (1980), 61 Ohio St.2d 280, 282, 15 O.O.3d 285, 400 N.E.2d 1354 (applying an "abuse of discretion" standard of review to evidentiary determination by hearing officer); *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus ("[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court"); *Castlebrook Ltd. v. Dayton Properties Ltd. Partnership* (1992), 78 Ohio App.3d 340, 346, 604 N.E.2d 808 (under Ohio law an "abuse of discretion" standard "should be used when the trial court makes discretionary decisions based on such things, for example, as evaluating the credibility of witnesses * * * ruling on the admission of evidence; making factual determinations * * * and whether to appoint a receiver").

{¶ 58} " ' "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." ' " *State v. Smith,* Franklin App. No. 03AP–1157, 2004-Ohio-4786, 2004 WL 2008465, at ¶ 10, quoting *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140, quoting *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144. See also *Bob Daniels Buick Co. v. Gen. Motors Corp.* (Oct. 13, 1998), Franklin App. No. 97APE12–1701, 1998 WL 720018.

{¶ 59} " '[A]n abuse of discretion involves far more than a difference in * * * opinion * * *. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.' " *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 482 N.E.2d 1248, quoting *State v. Jenkins* (1984), 15 Ohio St.3d 164, 222, 15 OBR 311, 473 N.E.2d 264.

{¶ 60} Sustaining ODJFS's objection to HCMC's proffered evidence concerning HCMC's contracts with VITAS, a hospice agency, which HCMC failed to disclose to the state auditor during the audit, the hearing examiner stated:

I'm not convinced that the testimony supports the conclusion [HCMC] properly withheld this from the auditors. I don't think they did.

I think [HCMC] did not properly share this. I think [HCMC] should have shared this information. Even if [it] had, though, I'm not sure it would have been especially relevant given its limited scope and time.

{¶ 61} Finding no error based on the hearing examiner's exclusion of HCMC's offered evidence, the common pleas court stated, "Appellant has chosen, at its own risk, to keep information private. Had it intended to use the VITAS charges

to help establish the usual and customary charge, then it should have * * * given the Auditors the benefit of that information any [sic] chose not to do so."

{¶ 62} We likewise find no abuse of discretion. As ODJFS notes, mere failure to supply information during the audit process may not be enough to preclude the admission of such information at a hearing to challenge the final audit. Here, however, the hearing examiner specifically requested briefing on the question whether HCMC's alleged failure to cooperate precluded admission of the contracts and related information. ODJFS briefed the issue; HCMC did not. The hearing examiner also allowed HCMC to offer testimony concerning the contracts. Under these circumstances, we cannot conclude that the common pleas court abused its discretion by failing to reverse the hearing officer's exclusion of evidence. Stated differently, we cannot conclude that the common pleas court's failure to reverse the hearing examiner's evidentiary ruling, was " 'so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.' " *Huffman,* 19 Ohio St.3d at 87, 19 OBR 123, 482 N.E.2d 1248, quoting *Jenkins,* 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264.

{¶ 63} Finding that the common pleas court did not abuse its discretion by failing to reverse the hearing examiner's exclusion of evidence offered by HCMC at the administrative hearing, we therefore overrule HCMC's second assignment of error on cross-appeal.

{¶ 64} By its first assignment of error on cross-appeal, HCMC asserts that the common pleas court erred by remanding the matter to ODJFS.

{¶ 65} R.C. 119.12 provides:

The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of this finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.

{¶ 66} Under R.C. 119.12, therefore, absent a finding that an agency's order is supported by reliable, probative, and substantial evidence, and is in accordance with law, a common pleas court is free to "make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law."

{¶ 67} In the present case, having found that ODJFS improperly determined the "usual and customary" rate with respect to HCMC's reimbursed Medicaid charges, the common pleas court remanded the matter to ODJFS to recalculate the proper "usual and customary" rate in accordance with the court's decision.

Significantly, the common pleas court did not order ODJFS to conduct a second hearing upon remand. See, generally, *Douglas Bigelow Chevrolet, Inc. v. Gen. Motors Corp.*, Franklin App. No. 02AP–1156, 2003-Ohio-5942, 2003 WL 22511496, at ¶ 57 (Bryant, J., concurring separately), stating, "R.C. 119.09 does not provide for a second hearing on remand. To hold otherwise would be to impermissibly add, enlarge, supply, expand, extend or improve R.C. 119.09 to meet a situation not provided for."

{¶ 68} Although the common pleas court incorrectly determined that HCMC was entitled to a surcharge for overhead expenses absent authority to support such a finding, we cannot conclude that the common pleas court erred because it remanded the matter to ODJFS. Specifically, we agree with the common pleas court's finding that the state auditor's analysis was flawed and with the court's finding that "[t]here is no evidence provided by the Department that comprises an analysis of or a comparison of the difference between billing by volume versus billing by device." Therefore, for different reasons from those of the common pleas court, we agree with the common pleas court's view that ODJFS improperly calculated the "usual and customary" rate with respect to HCMC's reimbursed Medicaid charges. Under such circumstances, we cannot conclude that the common pleas court's order remanding the matter to ODJFS was unsupported by reliable, probative, and substantial evidence and was not in accordance with law.

{¶ 69} Accordingly, HCMC's first assignment of error on cross-appeal is overruled.

{¶ 70} In summary, ODJFS's fourth assignment of error is moot; ODJFS's first assignment of error is overruled; ODJFS's second assignment of error is sustained in part; and ODJFS's third assignment of error is sustained. HCMC's two assignments of error on cross-appeal are overruled. Finding that absent any authority in statute or administrative rule to support its finding, the common pleas court abused its discretion when it found that HCMC was entitled to a surcharge for "overhead" costs associated with Medicaid billing, we reverse in part the judgment of the common pleas court. However, agreeing with the common pleas court's view that ODJFS's adjudication order was based upon comparisons lacking in equivalency, we affirm in part the judgment of the common pleas court. We also remand the matter to the common pleas court with instructions to return this matter to ODJFS for reconsideration of HCMC's "usual and customary" Medicaid reimbursement rate in a manner consistent with our opinion and in accordance with law.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

FRENCH and TYACK, JJ., concur.